# THE NORTH CHICAGO STREET RAILROAD COMPANY
## *v.*
## FRANK G. DUDGEON.

*Opinion filed February 19, 1900—Rehearing denied April 5, 1900.*

1. MASTER AND SERVANT—*exception to rule respecting exemption from liability for acts of independent contractor.* A street railway company engaged in relaying its rails by virtue of its charter and a special permit for that purpose from the city, is liable for injuries to its employees resulting from failure to guard against the consequences of piling paving stones in the street close to its tracks, even though the work is being done by an independent contractor.

2. SAME—*master is required to furnish reasonably safe place for servant to work.* The law requires a master to provide a reasonably safe place for the servant to work, and, failing to do so, he is answerable for resulting injuries unless the dangers are such as are reasonably incident to the servant's employment, or of which the servant has equal knowledge or means of knowledge with the master, or where the danger is imminent.

3. APPEALS AND ERRORS—*whether particular danger is an assumed risk is a question of fact.* Whether or not a street car conductor assumed the risk occasioned by the piling of paving stones close to the track is a question settled in the Appellate Court.

4. SAME—*when question of effect of servant's knowledge of danger is one of fact.* Whether a street car conductor had or should have had such knowledge of obstructions in the street at the place of his injury as charged him with contributory negligence is a question of fact, if there is any evidence tending to show the exercise of due care by him, and his conduct is not such as would be considered by all reasonable men as a careless disregard for his safety.

5. SAME—*question of proximate cause is one of fact.* Where there is evidence tending to show that the particular negligence charged was the proximate cause of the injury the question is one of fact, upon which the Appellate Court's judgment is final.

*North Chicago Street R. R. Co. v. Dudgeon*, 83 Ill. App. 528, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

JOHN A. ROSE, and LOUIS BOISOT, Jr., (HENRY CRAWFORD, of counsel,) for appellant.

E. S. CUMMINGS, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

We take the following statement of facts from the opinion of the Appellate Court:

"This cause was begun by appellee to recover damages for personal injuries alleged to have resulted from negligence of appellant. The fourth count of the declaration sets up the following facts: That the defendant, at the time of the accident, was engaged in the repairing and re-laying of certain rails, tracks and road-bed by it used, and was using in such repairing and re-laying large quantities of stones, granite blocks, etc., and had placed the same along the streets, near the tracks upon which it operated its cars; that the plaintiff was in the employ of the defendant as a conductor upon its cars, and that the defendant, at the time of the accident, carelessly and negligently placed large piles of stones, granite blocks, etc., in the street, at, near and alongside the west railroad track of the defendant, and failed to guard and protect the same, and failed to place any light or warning signal near it, and that the plaintiff, after sun-set on the day of the accident, while acting as conductor and while with due care attempting to board a certain car of the defendant standing at the place where the accident occurred, was thrown by a sudden jerking or starting of the car against the pile of stones and other material, and was thereby forced against and underneath the car, whereby, etc. The third count is in substance the same.

"The evidence shows that appellee, who was then a conductor of one of the cars of appellant, together with another conductor and a gripman, was going north on North Clark street, in the city of Chicago, on the east track of defendant, was met at Ogden front by a crew of appellant's employees in charge of a train which they had brought out for the crew on the north-bound train to

take charge of and run down town. This was done because the train of which plaintiff was one of the conductors was behind time, and to re-gain the time lost they were transferred to the other train without completing their trip. At the point where the transfer was made, O'Day & Farwell, contractors, were repairing the tracks of the defendant, and in the conduct of their work had piled stones west of and near the tracks in the street. While the transfer was being made, and before appellee had succeeded in getting aboard of his car, the train started up. By reason of the starting of the train, and by reason of the pile of stones adjacent to the track, the appellee was thrown upon the pile of stones and from them rolled under the train and was very seriously injured. The work of repairing the tracks was done by O'Day & Farwell under some kind of oral contract with appellant."

The case has been twice tried. A judgment in favor of the plaintiff was reversed by the Appellate Court. (*North Chicago Street Railroad Co.* v. *Dudgeon*, 69 Ill. App. 57.) Upon the second trial a verdict for the plaintiff was again returned and his damages assessed at $12,000. Judgment was entered on the verdict, and being affirmed by the Appellate Court, this appeal is prosecuted.

The errors relied on for reversal are, first, refusing to instruct the jury to find for the defendant; and second, refusing defendant's twenty-seventh instruction.

The gist of the third and fourth counts of the declaration, on which a recovery can be sustained if at all, is negligence in placing piles of stones along the sides of the track upon which appellee was required, by his service, to change from one train of appellant to another. Appellant insists that as to these two counts there can be no recovery, because the work of repairing its road-bed and track was being done by O'Day & Farwell as independent contractors, free from all control and supervision on the part of the defendant company; that the workmen

who were in their employ were in no way subject to the control of the defendant; that the doing of the work was not a nuisance *per se,* but the repair of a lawful public improvement; and that in the doing of this work O'Day & Farwell were not the servants of the defendant, but independent contractors.

The appellant company was chartered by the State of Illinois to operate a street railroad along the street in question. The work was being done upon written au- thority of the commissioner of public works of the city of Chicago given to the appellant railroad, which author- ized it to "re-lay the girder rails of their street railroad upon the condition that said work shall be done as re- quired by the commissioner of public works and subject to his orders. * * * The manner and time of doing said work, the pattern and design of said rails, shall conform to the ordinances of the city of Chicago."

There is an exception to the general rule that the doc- trine of *respondeat superior* does not apply to cases of independent contractors, viz., where the defendant com- pany is exercising some chartered privilege or power which could not be exercised independently of its charter. In *Economic Fuel Gas Co.* v. *Myers,* 168 Ill. 139, it was said' (p. 146): "The appellant was a corporation authorized by its charter to deal in gas. The proof shows that the per- mit to do all the work connected with the laying of the gas pipes was issued by the department of public works of Chicago to the appellant company, and not to the con- struction company. The appellant was thus engaged in the work of laying pipes to transmit gas through the public streets of the city under a charter of the State of Illinois and under a permit from the city of Chicago. It cannot, therefore, avoid liability for acts under its cor- porate franchises by simply letting a contract to a con- struction company. Even though the person who causes the injury is a contractor, he will be regarded as the ser- vant or agent of the corporation for whom he is doing

the work if he is exercising some chartered privilege or power of such corporation, with its assent, which he could not have exercised independently of the charter of such corporation. 'In other words, a company seeking and accepting a special charter must take the responsibility of seeing that no wrong is done through its chartered powers by persons to whom it has permitted their exercise.'—*West* v. *St. Louis, Vandalia and Terre Haute Railroad Co.* 63 Ill. 545; *Toledo, St. Louis and Kansas City Railroad Co.* v. *Conroy,* 39 Ill. App. 351; *Balsley* v. *St. Louis, Alton and Terre Haute Railroad Co.* 119 Ill. 68.

In *West* v. *St. Louis, Vandalia and Terre Haute Railroad Co.* 63 Ill. 545, this court said (p. 549): "The principle we consider to be substantially this: The company may be held liable when the person doing the wrongful act is the servant of the company and acting under its direction; and though such person is not a servant as between himself and the company, but merely a contractor or lessee, still he must be regarded as a servant or agent when he is exercising some chartered privilege or power of the company, with its assent, which he could not have exercised independently of such charter. In other words, a company seeking and accepting a special charter must take the responsibility of seeing that no wrong is done through its chartered powers by persons to whom it has permitted their exercise."

In *Chicago, St. Paul and Fond du Lac Railroad Co.* v. *McCarthy,* 20 Ill. 385, it was held that "contractors are the servants of the railroad company, and their tortious acts are properly chargeable to the company."

In *Darmstaetter* v. *Moynahan,* 27 Mich. 187, it was held that one who employs another to fill his ice-house by the cord, and obtains license from the municipal authorities to encumber the streets for that purpose, cannot shield himself from liability for injuries caused by unlawfully obstructing the streets with blocks and fragments of the ice, under an objection that his employee was a con-

184—31

tractor and alone liable. The court said: "The work was to be done for plaintiff in error and under the protection of a license given by the city to him as a personal privilege, and it cannot be presumed to have been understood that this license should be used as Kehl might choose, though contrary to its spirit or beyond its import. The license was obtained by the plaintiff in error as his own shield in carrying on a piece of work by and for himself, and the work was done under it by himself, by means of Kehl, who was his instrument. If Kehl had been prosecuted for creating a public nuisance he could not have 'justified his own right,' but would have been compelled 'to justify as agent' of the plaintiff in error under his contract. I am therefore of the opinion that the relations between Kehl and the plaintiff in error were such in respect to the creation of the mischievous obstruction as to implicate the latter in responsibility for injuries to third parties not in fault.—See *Sadler* v. *Henlock,* 4 El. & B. 57."

In *Woodman* v. *Metropolitan Railroad Co.* 149 Mass. 335, it was held that a railroad company was liable for injuries caused by reason of an obstruction in the street; that the fact that the work was being done under an independent contract would not exonerate it from liability. The court said: "But further, apart from the statute, if the performance of a lawful contract necessarily will bring wrongful consequences to pass unless guarded against, and if, as in the present case, the contract can not be performed except under the right of the employer, who retained the right of access to the premises, the law may require the employer, at his peril, to see that due care is used to prevent harm, whatever the nature of his contract with those whom he employs. (*Sturgis* v. *Cambridge Theological Education Society,* 130 Mass. 414; *Stewart* v. *Putnam,* 127 id. 403; *Gorham* v. *Gross,* 125 id. 232; *Bower* v. *Peats,* 1 Q. B. D. 321, approved in *Dalton* v. *Angus,* 6 App. Cas. 740, 4 Q. D. 162, and 3 id. 85; *Pickard* v. *Smith,* 10 C. B.

470; *Hole* v. *Sittingbourn and Sheerness Railway Co.* 6 H. & N. 488; *Circleville* v. *Neuding,* 41 Ohio St. 465.) Laying the track for the defendant necessitated the digging up of the highway and the obstruction of it with earth and materials. This obstruction would be a nuisance unless properly guarded against. The work was done under a permit issued to the defendant. Considering the general principle of the law, and also the special relations of horse railroads to the highways, and the policy of the statutes so far as the legislature has expressed itself on the subject, we are of the opinion that the defendant, having caused the highway to be obstructed, was bound, at its peril, to see that no nuisance was created.—*Veazie* v. *Penobscot Railroad Co.* 49 Me. 119. See, also, *Darmstaetter* v. *Moynahan,* 27 Mich. 188."

But counsel for appellant insist that if the law be as above stated with reference to the duties of a company exercising rights under a special license or charter, the authority and permit given to appellant extended only to the re-laying of the rails, and that neither the charter under which it is operating nor the permit covers the paving of the street or the removal of the stones therefrom. It might with equal force be claimed that an authority to go into the timber and cut cord-wood would not include the felling of trees. It is a matter of common knowledge that the doing of one is a necessary incident to the other. The defendant knew that the re-laying of its tracks in this paved street would necessarily require that the paving be taken up. The case of *West* v. *St. Louis, Vandalia and Terre Haute Railroad Co. supra,* cited by appellant, and the cases there referred to, support the right of appellee to recover here. It should not be forgotten, in addition to the foregoing rule, that the law requires that the master shall provide a reasonably safe place for the servant to work, and, failing so to do, is answerable for resulting injuries, unless the dangers are such as are reasonably incident to his employment, or of

which the servant has equal knowledge or means of knowledge with the master, or where the danger is imminent.

Most of the cases relied on by counsel for appellant in support of its contention in this connection, and that the danger to appellee was one of the assumed risks of his employment, involve injuries to third persons, and not to employees, around whom is thrown this cloak of protection that the master must provide safe means and a safe place in which to work,—as reasonably safe as is consonant with the character of the work and the object sought to be accomplished. The servant, in engaging in employment for hire, owes to the master the efficient employment of his time and faculties to accomplish the work he is hired to perform. The care he is able to take for his own safety is lessened measurably both by the duties he is to discharge and by the above well understood rule fixing the master's duty. We cannot hold the danger resulting from the piling of these stones to have been an assumed risk. Plaintiff testified that his duties as conductor were to collect fares and attend to the wants of passengers. He stated that he had never paid any particular attention to the stones before the accident; that he had never gotton off at that place before; that he had not noticed, up to and prior to the accident, how high the piles were or how close they were; that the first time his attention was called to them was when they stopped to change cars, when he was hurt. The jury were instructed fully as to the law governing risks assumed by the servant, and after a careful examination of the evidence it is clear they were warranted in finding that the risk was one not assumed by the plaintiff in his employment. The question was one of fact, and is settled by the judgment of the Appellate Court against appellant.

Appellant contends, however, that the plaintiff had such knowledge of the conditions existing on the street and at the place where he was injured as will charge

him with negligence contributing to his injury, and hence he is not entitled to recover. That question is one of fact and is settled adversely to appellant by the judgment of the circuit court and its affirmance by the Appellate Court, if there was any evidence tending to show the exercise of due care by the plaintiff, or unless his own negligence is such that all reasonable minds would concur in holding his conduct so clearly negligent as to evidence a careless disregard for his own safety.

In *Illinois Steel Co.* v. *Schymanowski*, 162 Ill. 447, this court said (p. 459): "Undoubtedly the general rule is that an employee who continues in the service of his employer after notice of a defect augmenting the danger of the service assumes the risk as increased by the defect. But this rule is subject to qualification. In the first place, there is a distinction between knowledge of defects and knowledge of the risks resulting from such defects. The servant is not chargeable with contributory negligence if he knows that defects exist, but does not know, or cannot know by the exercise of ordinary prudence, that risks exist."

In *Consolidated Coal Co.* v. *Haenni*, 146 Ill. 614, speaking of the risks assumed by a servant, the court said: "Not only the defects but the dangers must be known to him."

In *Russell* v. *Minneapolis and St. Louis Railroad Co.* 35 Minn. 230, a brakeman was injured by a Miller car-coupler. The court held: "It is not enough that the servant knew, or ought to have known, of the defects. He must also have known or understood the risks."

In *Chicago and Northwestern Railroad Co.* v. *Swett*, 45 Ill. 197, the court said (p. 203): "There is no rule better settled than this: that it is the duty of railroad companies to keep their road and works and all portions of the track in such repair and so watched and tended as to insure the safety of all who may lawfully be upon them, whether passengers or servants or others." In that case a fireman was killed by reason of a defective condition

of the road-bed. The court further said: "In the case be-
fore us there was no special peril in acting as a fireman,—
only the general hazard all are subject to on a locomotive
or on a train. The peril consisted in the defective con-
struction of the road and its appurtenances, its culverts
and bridges, which the fireman could know nothing about
and which he could not have discovered by the exercise
of ordinary precaution and prudence. Indeed, he was
not required to know anything about that. The implied
undertaking of his employers that the road and culverts
and bridges were properly constructed and safe for the
passage of trains was sufficient for him."

Railway companies have no right to erect machines
for any purpose so near the track that the slightest in-
discretion on the part of the employee will prove fatal.
Dudgeon's duties as conductor were principally on the
car, attending to the collection of fares, and his knowl-
edge of the condition of the track or the street adjoining
the same might easily have been very much less than
that of an ordinary passenger, who would have nothing
else to occupy his mind except observation as the car
proceeded. In *Texas* v. *Pacific Railway Co.* 51 S. W. Rep.
555, the court said: "Simply failing to see the danger-
ous obstruction overhanging the track is not enough,
unless the danger was obvious to him at the time, though
it might have been seen if he had been on the lookout;
for the law imposes no obligation on the train crew, or
any of them, to be on the lookout for such things, but, on
the other hand, they may give their whole and undivided
attention to the careful and diligent performance of their
duties, relying on the master to give them a safe, clear
and unobstructed track. This does not mean that if they
see the danger or know thereof, or it is obvious to them,
they are not required to avoid it by the exercise of ordi-
nary care, but it means that they are not required to an-
ticipate it, look for or expect it. It is not part of their
duty to do so. The master must look to things like this

for them, and he must do so at his peril." The change
of cars at this point was not, as appears from the evi-
dence, a customary or usual occurrence,—so far, at least,
as the plaintiff was concerned.    Whether he should be
obliged to anticipate the order to transfer cars or train
crews at this point was a question of fact for the jury.
*Dallemand* v. *Saalfeldt*, 175 Ill. 310.

Appellant further insists that the obstructions to the
street were not, and could not have been, the proximate
cause of the injury, and that the only efficient cause was
the starting of the car, for which it is not answerable.
Plaintiff's testimony as to the manner of his injury was
in part as follows: "I left the north-bound train and
took the south-bound, and as I was getting off I got off
of the north-bound and went round the front of the grip
of the south-bound car up to my car, and there were
stones all over there.    I was operating the trail-car of
the south-bound train at that time.    I was to take that
car, but the stones were piled all along so high that I
could not step over, so I went to the rear to get on.    But
the stones were high there, and I could not get on with-
out going way back and walking round.    To avoid that,
when I did not want to lose too much time here, I walked
to the front end to see if I could find a place where I
could step over.    I was at the front end, and there was
a place where they were not quite so high, and I stepped
over, and had the register under my arm, and was get-
ting on with my right hand; had hold of the handle, and
the stones.    The rail was about a foot and a half at that
place.    Some places they were closer, some places fur-
ther, some places piled up to the curb; and just as I
stepped the car started and I fell forward, slanting, and
struck on my head and shoulder, and the stones forced
me back under the foot-board, and the foot-board rolled
me over till the car got clear over me."

In *City of Joliet* v. *Shufeldt*, 144 Ill. 403, the court said
(p. 410): "The general doctrine is, that it is no defense

in actions for injuries resulting from negligence, that the negligence of third persons or an inevitable accident or an inanimate thing contributed to cause the injury to the plaintiff, if the negligence of the defendant was an efficient cause, without which the injury would not have occurred."

In *St. Louis Bridge Co.* v. *Miller*, 138 Ill. 465, the plaintiff was crossing the bridge of the defendant, which was constructed with no sufficient railings between the carriageway and the footpath to protect the pedestrians on the footpath from injuries likely to be caused by droves of animals passing along the carriageway. By reason of the want of the railing some mules got onto the footpath on which plaintiff was walking and injured her. The court say (p. 476): "There is a sense in which it may be said that the injury was caused by the persons in charge of the mules, since if they had not undertaken to drive said mules over the bridge the injury would manifestly not have happened. But this is not inconsistent with the further fact that the injury was also caused by the negligence of the defendant in not providing proper railings or barriers, and it is only in the sense here indicated that the instruction, in order to be applicable to the facts as proved, could have referred to the injury as being caused by the persons in charge of the mules. In legal contemplation the case is one where the injury was inflicted by the co-operating negligence of the bridge company and the persons in charge of the mules, and the rule is well settled 'that a person contributing to a tort, whether his fellow-contributors are men, natural or other forces or things, is responsible for the whole, the same as though he had done all without help.' (*Village of Carterville* v. *Cook*, 129 Ill. 152; Bishop on Non-Contract Law, sec. 518.) The proposition of the instruction, then, that the plaintiff could not recover if she was injured by third persons not under the control of the defendant, when applied to the evidence before the jury, was clearly misleading and

erroneous." To the same effect are *Union Railway and Transit Co.* v. *Shacklet*, 119 Ill. 232; *Consolidated Ice Machine Co.* v. *Keifer*, 134 id. 481; *Pullman Palace Car Co.* v. *Laack*, 143 id. 242.

It is clear there was evidence tending to show that the stones in question were the proximate cause of the injury, and the question is one of fact settled by the trial and Appellate Courts.

The court refused to give the following instruction tendered by the appellant:

"The jury are instructed that while the law permits the plaintiff in the case to testify in his own behalf, nevertheless the jury have the right, in weighing his evidence, to determine how much credence is to be given to it, and to take into consideration that he is the plaintiff and interested in the result of the suit."

In *West Chicago Street Railroad Co.* v. *Estep*, 162 Ill. 130, we held the refusal of the trial court to give a similar instruction was not error, as the substance of it was embodied in another that was given. In *West Chicago Street Railroad Co.* v. *Dougherty*, 170 Ill. 379, we held the refusal to give an instruction identical with this was cause for reversal, the conflict of evidence being sharp and no instruction being given on the question. There was no substantial conflict in the testimony given by the appellee and that of any other witness upon any matter material to the issue. There was practically no conflict upon controlling matters. Appellant called two witnesses, neither of whom could be considered as interested in the result of the suit. The instruction stated a correct proposition of law and should have been given. Its refusal, however, it is apparent, was not prejudicial to the appellant, and therefore not error for which a reversal should be had.

The judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*