### Lewis Campbell, Adm'r, etc., v. City of Clinton.

1. MASTER AND SERVANT—*Authority of a Vice-Principal Must be Shown.*—In order to hold a municipality for the act of a vice-principal, his authority to act as such vice-principal must be shown.

Trespass on the Case.—Death from negligence, etc. Appeal from the Circuit Court of De Witt County; the Hon. WILLIAM G. COCHRANE, Judge, presiding. Heard in this court at the November term, 1900. Affirmed. Opinion filed February 28, 1901.

E. W. DUNHAM, JOHN FULLER, and HERRICK & HERRICK, attorneys for plaintiff in error.

MICHAEL DONAHUE, WILLIAM BOOTH, and MOORE, WARNER & LEMON, attorneys for defendant in error.

MR. JUSTICE BURROUGHS delivered the opinion of the court.

Plaintiff in error, Lewis Campbell, as administrator of the estate of David W. Thompson, deceased, prosecuted a suit in case against appellee, the city of Clinton, in the Circuit

Court of DeWitt County, for, as is alleged, negligently causing the death of his decedent, while he was engaged in the service of the city.

A trial by jury had proceeded so far that the plaintiff had offered his evidence and rested, when counsel for defendant requested, and the court gave a peremptory instruction to the jury to find the defendant not guilty, and that verdict being returned, a judgment was entered in favor of the defendant in bar of the action.

Plaintiff brings the case to this court by writ of error, and urges the judgment reversed and the cause remanded, claiming that the court refused proper and admitted improper evidence, and improperly directed the verdict.

The declaration contains three original and an additional count, to which a plea of not guilty was filed.

The first count charges the city was having a well dug under the directions of its duly appointed committee, and for that purpose employed, with others, David W. Thompson, in his lifetime, and ought to have furnished him a reasonably safe place to work upon, and appliances to work with, yet it negligently erected a defectively constructed platform in the well, and directed Thompson to stand upon it when at work, and while he was so upon it, and in the exercise of due care for his own safety, on account of such defective construction, it broke and fell, carrying him with it, a great distance, and causing bricks to fall upon him, whereby he was so wounded that he afterward died from the effects thereof.

In the second count it is also charged that the platform was made of old, decayed, knotty timber, and had a great number of bricks upon it when it fell.

The third count is substantially like the second, with the further averment that the city had notice of the kind of timber the platform was made of.

The additional count charges all that the third does, and also avers that the city, with knowledge that the platform was insufficient to sustain so much weight, wantonly, recklessly, carelessly, and negligently piled a great many brick,

to wit, 5,000, upon the platform, until it broke and fell, etc. And all the counts aver that Thompson left a widow and five children surviving him, and that plaintiff was duly appointed administrator of his estate by the County Court of DeWitt County.

The evidence shows that the council of the city of Clinton, for the purpose of increasing the quantity of water in the well, from which the city obtained its water supply, by resolution empowered the committee on fire, water and light, in conjunction with the mayor, to have the well deepened. The well was fifty feet in diameter, and twenty-four feet deep, and was to be deepened only twenty-four feet in diameter.

The committee and mayor directed Moffet, the superintendent of the water works of the city, to provide material, men, and superintend the deepening of the well. He proceeded accordingly, and caused the water to be pumped out of the well and a hole twenty-four feet in diameter excavated in the bottom, in which he put curbing around the sides, and then caused a brick wall to be built on top of the curbing to the top of the excavation; then more excavating was done and a platform built at the top of the wall by the men doing the excavating by placing a beam 10 x 12 across the new part of the wall, with the ends resting in the wall near the top. Across this were placed nine stringers 4 x 4, with their ends resting on top of the wall, and upon these were laid two-inch plank. Upon this platform the bricklayers stood and built more wall, and it and the curbing would settle until the latter reached the bottom of the excavation; then the platform would be taken down, the water again pumped out, four or five feet more of excavating would be done, and the platform would again be constructed at the top, out of the same material, and by the same men; the bricklayers would stand upon it and again build up the wall as before. This was repeated until the well had been deepened some eighteen or twenty feet, when from some cause the curbing and wall became lodged so it would not settle, and in order to make it go down, the men

doing the excavating began to pile bricks upon the platform to force the curbing and wall down, and after they had put about 1,000 brick upon it, H. C. Henson, the chairman of the committee on fire, water and light, came into the well and ordered the men to stop putting brick on the platform, informing them that it was dangerous, and stopped all the work upon the well except pumping the water out, and then (about two o'clock in the afternoon) he left to go and get hydraulic jacks to dislodge the curbing and wall by force applied to the bottom, and while he was gone for that purpose, the men, after talking for some time among themselves concerning the danger of putting more bricks onto the platform to force the curbing and wall to settle, concluded to, and did, put about 2,000 more on, notwithstanding the orders given by Henson; and while so doing, two of the stringers of the platform broke, together with the planks of the floor above them, thereby causing plaintiff's intestate, who was standing upon it and then in the act of piling bricks upon it, to fall to the bottom of the well, and some of the bricks fell upon and so badly injured him that he afterward died from the effects thereof.

Plaintiff's intestate was one of the men employed to make excavations, construct the platform, and wait upon the bricklayers; and among those employed and who worked with him, was Moore, the superintendent of the streets of the city, who, in the absence of Moffet or Henson, acted as foreman of the men doing the excavating. Moore agreed to and aided the men in piling more brick upon the platform, and they all knew how, and of what the platform was constructed, and that Henson had ordered them to stop piling any more brick upon the platform, or doing any other work at the well, except the pumping of the water out. While Henson went for the jacks, and before the men resumed piling bricks upon the platform, they, Thompson among them, talked over the danger to them of doing so.

The two stringers which broke were of pine and free of knots or decay; the others were of oak. The city furnished

plenty of oak timber, 4 x 4, for the stringers, but the men used the pine of their own motion, plaintiff's intestate being one of them, and knew.all about it.

The day on which plaintiff's intestate received his injuries, and for a day or so before, Moffet was sick, and for that reason unable to supervise the work of the well; and at his request, Henson directed the men for him in his absence.

Moore worked at excavating, constructing the platform and waiting on the bricklayers, the same as plaintiff's intestate, and was not shown to have had the authority to hire and discharge any of the men doing the work.

The only evidence which the court refused to admit, and of which counsel for plaintiff in their printed brief and argument in this court complain, consists of the refusal of the court to allow answered the two questions put by counsel for plaintiff in error, to their witness, Henson.

" Q.   Mr. Moore had charge of the men at the well ?

Q.   You may state whether or not your committee had knowledge of the fact that Moore had charge of the men during your absence, or you as chairman." (P. 7.)

' The bill of exceptions shows that the court afterward permitted the witness, Henson, to state fully all that the two questions were calculated to elicit from him, hence plaintiff in error was not prejudiced in any way by that ruling of the court.

On page 8 of their brief the same counsel complain that " on cross-examination of the same witness, he was permitted to state, over the objection of the plaintiff, that he did not authorize any one to pile bricks on the curb (platform) and that he gave positive orders not to do so," insisting it was not cross-examination.

We think, strictly speaking, perhaps it was not cross-examination; but it was not improper evidence, and since the record shows that the court afterward permitted counsel for plaintiff to fully cross-examine the witness on that point, we do not think any prejudice resulted to plaintiff on that account.

The principal contention of plaintiff in error is that the evidence shows that Moore was vice-principal of defendant,

and that he directed the decedent to put the brick upon the platform and of what to construct it, and that defendant is liable for his negligence in directing so many bricks to be piled upon it when he knew two of the stringers were pine, and would not support that much weight.

But the evidence, in our opinion, does not show that any one having sufficient authority from the city, constituted Moore its vice-principal for any purpose connected with the deepening of the well; all it does show, or tends to show, is that he worked with the men as one of them, and in the absence of Moffet or Henson, acted as foreman of the excavating crew—not by the direction of the committee or mayor of the city, but only by the direction of Moffet, who himself was but the superintendent of this work, and without authority from the city to appoint any one to act in his absence as its vice-principal. Decatur Cereal Mill Co. v. Gogerty, 80 Ill. App. 632, and same case in 180 Ill. 197.

As the deceased and his fellow-servants used pine timber for two of the stringers in the platform, when the city furnished them plenty of oak timber for that purpose, he and they are to blame for the consequences of it, and not the city.

The efficient cause of Thompson being killed, however, was the piling of so many bricks upon the platform by the men, the decedent among them, when they and he knew how and of what the platform was constructed, and the purpose for which it was to be used; and they and he fully comprehended the danger of so doing, as is shown by their talk among themselves about such danger, after Henson had left, and just before they concluded, contrary to his express orders not to do so, to resume piling more bricks upon the platform.

The evidence produced by the plaintiff then fully established that Thompson knew the floor of the platform was supported partly by two pine stringers which were likely to break, and let him, and the brick upon the platform, fall into the well, and the danger therefrom to him from his

standing upon it while more brick were being put onto it by himself and his companions. And the law will not permit the administrator of his estate to recover from the city under those circumstances, although Henson knew the two pine stringers were there before he left. Howe v. Medaris, 183 Ill. 288.

Therefore the Circuit Court properly directed a verdict for the city, and the judgment will be affirmed.