THE CITY OF CHICAGO

*v.*

THOMAS O'MALLEY.

*Opinion filed April 16, 1902.*

1. NEGLIGENCE—*when city is liable for bridge tender's negligence.*    A city is liable for an injury received by a boy of tender years who was being chased off a swinging bridge by a party in the personal employ of the bridge-tender, a city employee, where the latter had directed such party to look out for the boys, and although he saw them running toward the shore began to turn the bridge, and had turned it some seven feet when plaintiff, attempting to leave the bridge, fell between it and the abutment and was injured.

2. INSTRUCTIONS—*party cannot complain of refusal of instruction stating abstract rule of law.*    A party cannot complain that an instruction is refused if he has failed to make an application of the rule of law announced therein to the evidence.

*City of Chicago* v. *O'Malley*, 95 Ill. App. 355, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

ANDREW J. RYAN, and JAMES J. KELLY, for appellant.

SULLIVAN & MCARDLE, and WILLIAM P. HAYS, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is an action on the case, begun in the circuit court of Cook county for damages for personal injuries received by appellee. Upon a trial before a jury appellee obtained a verdict of $8000, and the circuit court, on *remittitur* of $3000, entered judgment in favor of appellee for $5000. Upon appeal to the Appellate Court for the First District this judgment was affirmed, from which judgment of affirmance an appeal was taken to this court.

The declaration alleges that appellee, a minor, while upon the Erie street bridge, was injured, and charges against appellant several classes of negligence, viz.: negligently suffered the bridge and approaches to be and remain out of repair; negligently suffered the said approaches to be and remain unguarded; negligently and wrongfully operated said bridge; negligently hallooed and gesticulated at plaintiff and wrongfully caused the bridge to turn. The additional count charges the same negligence, amplifying the last two charges, thus: carelessly and negligently frightened the plaintiff and chased him from and off said bridge by hallooing at and gesticulating at said plaintiff, causing said plaintiff, then being in safety on the bridge, to attempt to run off the same while said defendant was in the act of swinging the said bridge, and the defendant, well knowing the premises, then and there carelessly and negligently continued to swing and keep said bridge in motion, whereby, etc.

It appeared on the trial that on October 24, 1893, the plaintiff, then a boy of six and one-half years of age, in company with other children of like age, was passing along, on foot, over the Erie street bridge, in the city of Chicago. This bridge was in charge of one Moriarity, a bridge-tender for appellant, and Moriarity had under him that day one O'Brien as a helper. O'Brien was not employed by appellant, but was employed by Moriarity without authority from the city, was paid personally by Moriarity and could be discharged at his will. On the morning of the accident Moriarity, who was about to turn the bridge for some repairers who had come to work upon it, requested O'Brien to "look out for the boys so they won't get hurt," and then commenced turning the bridge south. While the bridge was turning O'Brien picked up a stick, and, in the language of Moriarity, "chased the boys off the bridge " When appellee reached the end of the bridge abutting the street the bridge had then turned some five or six feet, and as he was about to step on to the sidewalk he was in some manner thrown between the bridge and the abutment, rolled between the bridge and the abutment a short distance, and fell down into the river below and sustained serious and probably permanent injuries. Moriarity saw the boys on the bridge; saw O'Brien running toward them in a threatening manner; saw all the conditions and surroundings of the boys, and saw appellee at the time he fell from the bridge. Uncontradicted testimony shows that it was Moriarity's duty to watch and see whether people got on and off the bridge safely; that it was his duty to be as careful as possible; that he had instructions from the city to look after the safety of the people while on the bridge; that there were directions by the commissioners of public works to look after the public safety, and that it was the duty of a bridge-tender, when children were on the bridge and the bridge was about to be turned, to notify them of the danger.

Two reasons are urged by appellant why the action of the Appellate Court should be reversed: First, because appellant cannot be held liable for the alleged tortious acts of the bridge-tender's employee, O'Brien, because, as in its contention, he was not a servant of appellant, and the negligence on his part is the only negligence that this record has any tendency to establish; and second, that if there is anything tending to show the negligence of Moriarity, then, even in that case, the refusal of the trial court to give instructions 21 and 22 was error. Instructions 21 and 22 are as follows:

21. "The jury are instructed that the city of Chicago is not liable for the act or conduct of persons not in its employ.

22. "The court instructs the jury that the city of Chicago is not liable for the act or conduct of its servants when such act or conduct is not within the scope of their duty."

As to appellant's first contention, the evidence shows that while it is true O'Brien was chasing the boys from the bridge, nevertheless Moriarity saw the appellee fleeing terror-stricken from the bridge. He knew, or should have known from the immature age of the children, that if the bridge should be turned the child would be placed in great danger. It was his duty, not only naturally but especially prescribed by the chairman of the board of public works of the city of Chicago, to exercise care in seeing that any one on the bridge was not placed in danger. The testimony of McCormick, a witness for the city, was that a bridge-tender should notify children of their danger, and that he should call to a boy if he thought the boy was in danger, yet Moriarity violated all these duties that he owed to appellee, and negligently, if not willfully, turned the bridge some seven feet, and placed it in such a condition that the injury to appellee almost necessarily resulted. If the acts of both combined contributed to the injury, then appellant cannot avoid liabil-

ity by showing that O'Brien was not its servant. (*North Chicago Street Railroad Co.* v. *Dudgeon,* 184 Ill. 477, and cases cited.) These, however, are questions of fact which have been determined by the Appellate Court. *North Chicago Street Railroad Co.* v. *Dudgeon, supra; Ide* v. *Fratcher,* 194 Ill. 552.

We think it was not error to refuse the twenty-first instruction, because, *first,* it stated an abstract proposition of law; and *second,* it was calculated to mislead the jury. Under the circumstances in this case, if the jury believed, from the evidence,—which they rightfully and naturally might do,—that the injury to the plaintiff was caused in part by the negligent acts of O'Brien, and although the negligent acts of Moriarity contributed to and proximately caused the injury, yet under this instruction it might lead the jury to return a verdict for the city. As before stated, the evidence shows that Moriarity knew the plaintiff was running to the end of the bridge and was liable to be hurt, and this instruction tends to draw the attention of the jury away from the acts of Moriarity and direct them to the acts of O'Brien. *Third,* the jury had a right to consider O'Brien's acts in determining whether or not Moriarity was negligent. If Moriarity had not known that the boys were threatened and were running toward the end of the bridge and were being chased by O'Brien, the acts of Moriarity might not have been such as would cause the city to respond in damages; but the very negligence of Moriarity turns upon the conduct of O'Brien at that time, of which conduct Moriarity had full knowledge. If the negligence of O'Brien, only, were set up in the declaration and were relied upon as the ground of recovery in this case, we would be disposed to the view that O'Brien was not the agent or employee of the city and that the city was not liable for his acts. But such is not the case presented by the pleadings or the evidence. Whatever was done by O'Brien was done by the direction and with the knowledge of Moriarity,

who was the agent of the city and who owed the duty to conserve the public safety in the operation of the immense and dangerous structure of which he had charge. Moriarity was controlling the movement of the bridge with the full knowledge of the acts of O'Brien and the peril of appellee, and it cannot be said, under the evidence, as a matter of fact or law, that O'Brien's acts alone were responsible for the injury. Being apprised of the danger, Moriarity owed the duty of so controlling the movements of the bridge that injury should not result. That he made no effort in this direction is entirely clear from the evidence.

As to instruction 22, it is also an abstract proposition of law, and it could not but have been misleading because the only servant of whose negligent conduct complaint is made is Moriarity, and there is no question but that he was acting in the scope of his employment. This instruction was aimed to cover O'Brien's,—not Moriarity's,—acts, and under the peculiar facts and conditions of this case, where the acts of both Moriarity and O'Brien combined to cause the injury, to refuse this instruction was not error. The very fact that it is an abstract proposition of law, with no direction to the jury how to apply the law to the facts of the case, would very likely have led them to believe that the act of Moriarity in employing O'Brien being beyond the scope of his employment, the city need not respond in damages for the joint negligent acts of O'Brien and Moriarity, even where the latter's acts were the proximate cause of the injury. A party cannot complain that an instruction is refused if he fails to make an application of the rule of law to the evidence. *Vallette* v. *Bilinski*, 167 Ill. 564.

On the whole case we think justice has been done and that there was not prejudicial error committed by the trial court in the matters complained of.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*