## Perry Asplund, Appellee, v. The Conklin Construction Company et al., Appellants.

### Gen. No. 5195.

1. STATUTE OF LIMITATIONS—*what not statement of new cause of action.* If the declaration or any count thereof stated a cause of action, although it might be defectively stated, then the re-statement in legal form of the defective statement, is not the statement of a new cause of action.

2. STATUTE OF LIMITATIONS—*what not statement of new cause of action.* If the original declaration was general in its terms and used the term "default" of the defendant instead of the term "negligence" and if it stated the necessary facts, although defectively, an amended declaration does not state a new cause of action if it follows the original declaration but merely sets forth the facts with greater preciseness and particularity.

3. TORTS—*when evidence tends to establish joint liability. Held,* that the evidence tended to show joint liability where it appeared that both of the defendant companies were co-operating in the construction of the same telephone line, that they had their offices in the same room, that the men, tools and implements of one were used by the other, that the superintendent of one was in charge of the business of the other and that the employes of each company worked for either company as directed by the manager of one of them.

4. MASTER AND SERVANT—*when latter cannot recover.* Where there is a safe way and a dangerous way to do work, both equally practicable, and the employe adopts the dangerous way, there can be no recovery.

5. MASTER AND SERVANT—*when latter cannot recover.* If the rules made by the master for the performance of work by servants are reasonable and practicable, and the servant is informed of the rules and then voluntarily adopts another or chooses a method in disregard of an express order, and is injured because of his disregard of the rule of the master, he assumes the risk of injury and cannot recover.

6. MASTER AND SERVANT—*when latter cannot recover.* Where a servant has equal means of knowledge of defects with the master he cannot recover for injuries sustained because of such defect.

7. INSTRUCTIONS—*must not ignore defense.* An instruction is erroneous which directs the jury that they may find that the plaintiff was in the exercise of due care if it entirely ignores facts of which there was proof which tended to show that the plaintiff was not in the exercise of ordinary care, and which likewise ignores

the question of assumed risk which was supported by evidence in the cause.

8. INSTRUCTIONS—*when upon contributory negligence erroneous.* Instructions upon the exercise of ordinary care asked by the plaintiff are erroneous if they emphasize and repeatedly call the jury's attention to a particular matter charged as contributory negligence by the defendant and ignore other matters of claimed contributory negligence.

Action in case for personal injuries. Appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the April term, 1909. Reversed and remanded. Opinion filed March 11, 1910.

DONAHOE, McNAUGHTON & McKEOWN, for appellants; JOSEPH W. JONES, of counsel.

D. R. ANDERSON, for appellee; S. E. FREUND, of counsel.

MR. JUSTICE THOMPSON delivered the opinion of the court.

On December 1, 1906, Perry Asplund began a suit in case against the Conklin Construction Company and the Interstate Independent Telephone and Telegraph Company to recover damages for injuries claimed to have been sustained by him while in their employ. A declaration consisting of seven counts was filed, averring that the plaintiff was injured on December 2, 1904. A general demurrer was filed and sustained to all the counts. On June 16, 1908, an amended declaration containing five counts was filed. A special demurrer was sustained to all the amended counts, and in January, 1909, each count of the amended declaration was amended. The defendants, after a demurrer to the last amended declaration had been overruled, filed a plea of the general issue and two special pleas of the statute of limitation; that the several supposed causes of action, in the amended declaration declared upon, did not nor did any or either of them accrue to the plaintiff within two years

before June 16, 1908. The plaintiff demurred to the special pleas. The court sustained the demurrer and the defendants abided by their special pleas. On a trial before a jury, a verdict was rendered against both defendants for $5,000 on which judgment was rendered. The defendants appeal to this court.

The first assignment of error questions the ruling of the trial court in sustaining the demurrer to the special pleas. The appellants contend that since a general demurrer was sustained to each count of the original declaration, it has been adjudged that the declaration stated no cause of action, and that therefore there was no cause of action stated in any declaration within two years from the time the cause accrued, and that the plea of the statute was a good plea and that therefore the demurrer to the pleas was erroneously overruled. If the declaration or any count stated a cause of action although it might be defectively stated, then a re-statement in legal form of the defective statement is not the statement of a new cause of action. In the original declaration the first count avers that plaintiff was in the employ of the defendants engaged in constructing a telephone line at the time he was injured and that the defendants by their servants carelessly planned and managed the construction of said line and that through the negligence of defendants he was injured; the fourth count, after averring that on December 2, 1904, the plaintiff was working as a lineman in the construction of a telephone line for the use of the defendants, avers that said telephone line and the construction thereof, ''were then and there under the care and supervision of divers then servants of said defendants and each of them, who were then and there constructing, altering and maintaining the said telephone line as aforesaid, and whereas, it then and there, became and was the duty of the said defendants and each of them to provide for the plaintiff reasonably safe, sound and secure material with, on and about which to perform his said

work as lineman, but therein the defendants and each of them wholly failed and made default, by means whereof and in consequence of said default and neglect of said defendants and each of them as aforesaid, the plaintiff who was then and there with all due care and diligence working as lineman on, in and about said telephone line was then and there precipitated with great force from a great height, to wit, twenty feet, to and upon the ground," and injured, etc.; the fifth count avers as in the fourth count to the first "whereas" and then avers that "it then and there became and was the duty of said defendants and each of them to inspect certain cross-arms which were then and there a portion of the material used in the construction  *   *   *  of said telephone line, and to know that the said cross-arms were reasonably safe to use in the construction  * ·  *   *  of said telephone line, but therein the defendants wholly failed and made default; by means whereof and in consequence of said default and neglect of said defendants, and each of them the plaintiff," etc.; the sixth count alleges the duty of the defendants to inspect a cross-arm and that defendants neglected to do so, etc.; the seventh avers the duty of defendants to furnish to plaintiff a safe cross-arm on which to climb and a neglect to do so.

The first count of the last amended declaration avers that "the defendants carelessly, negligently and wrongfully  *   *   *  failed to furnish to plaintiff a reasonably safe cross arm upon which the plaintiff might climb," etc.  The third count of the amended declaration avers that the defendants negligently failed to inspect the cross-arm upon which it became necessary for plaintiff to climb and rest his weight. The fourth count avers the duty of the defendants to provide the plaintiff with reasonably safe and sound material with, on and about which to perform his work as a linesman but therein the defendants failed and made default and in consequence of said default and neglect of the defendants the plaintiff was injured.

The second and fifth counts aver the duty of the defendants to inspect the cross-arms, which were a portion of the material used in the construction of said telephone line, and to know that they were reasonably safe to use in the construction of said line but therein the defendants failed and made default, and in consequence of said neglect of the defendants the plaintiff was injured. The original declaration was general in its terms and used the term default of the defendants in place of the term negligence, and while it stated the necessary facts yet it was a defective statement of plaintiff's cause of action; there is no new or additional fact set forth in any count in the amended declaration that is not found in the corresponding count in the original declaration but only a more precise and particular statement of the cause of action set forth in the original declaration. A declaration may contain sufficient averments to state a cause of action and be demurrable because it stated too much as when a count is bad for duplicity, and yet when it is divided into different counts, they may be good although containing nothing new. Lee v. Republic Iron and Steel Co., 241 Ill. 372; same case 148 Ill. App. 585. A count which is but a re-statement in somewhat different form of the cause of action set up in a count in the original declaration filed in time is not barred by the statute of limitations. Chicago City Ry Co. v. Leach, 182 Ill. 359; Chicago City Ry. Co. v. McMeen, 206 Ill. 108; C. C. Ry. Co. v. Hackendahl, 188 Ill. 300. There being no new or additional fact stated in the amended declaration, the demurrer to the pleas of the statute of limitations was properly sustained.

The appellant, Interstate Telegraph and Telephone Company, claims it is not liable because it was not constructing the line. The evidence shows that the Conklin Construction Company was engaged in constructing a new telephone line near Joliet for the Interstate Independent Telephone and Telegraph Company. The latter mentioned company by its charter obtained from

the state the franchise and had secured the right to place the line on the public highway; the construction company had no right to build any line on the highway except for and under the rights of the Telephone and Telegraph Company. The evidence tended to show that both companies were co-operating in the construction of the line; that they had their offices in the same room; that the men, tools, and implements of the Telephone and Telegraph Company were used in the work by the Construction Company; that the superintendent of the Telephone and Telegraph Company was in charge of the business for the Construction Company, and that the employes worked for either company as directed by the manager. These facts if proved tended to show a joint liability, if either company is liable. N. C. St. R. R. Co. v. Dudgeon, 184 Ill. 477; West v. St. L. V. & T. H. R. R. Co., 63 Ill. 545; Balsley v. St. L. & T. H. R. R. Co., 119 Ill. 68; Chicago and Grand Trunk Ry. Co. v. Hart, 209 Ill. 414.

The evidence also shows that appellee was an experienced lineman, having worked for several years at that employment; that he knew that the Construction Company did not inspect the cross-arms; that appellee had a safety belt, furnished by himself, attached to his person, but he was not using it at the time of the accident.

Appellee at the time of the accident climbed a pole on which a messenger wire, which is a strong wire intended to carry a bunch of smaller wires wrapped in a cable, had been strung five feet below the top of the pole. An assistant tied a painted ten-pin cross-arm about three and three-fourths inches in width by three inches thick to a rope, and appellee pulled the cross-arm to the top of the pole and placed it in a gain or notch which had been cut in the pole eight inches below the top and then drove in two lag bolts or screws to hold the arm in place. The lag bolts were driven in so tight that the washers between the bolt heads and the cross-arms were sunk into the wood. The cross-

arm was not level and appellee climbed down and stood on the messenger wire and leaning out on the cross-arm put his weight on it and struck the cross-arm with his hand axe to try and adjust it, before fastening the iron braces already attached to the cross-arm to the pole, when the cross-arm broke at a knot which extended through the cross-arm between where his weight was on it and the pole. The appellee fell to the ground and was injured. A man named Hansel was boss of the crew who were placing the cross-arms and stood some distance away to see when the arm was level. There is proof that other men on adjoining poles doing similar work used safety belts. Parsons, the superintendent for appellants, testified that he had instructed all the linemen, including appellee, not to work while up on poles without using their safety belts, and appellee testified that it was not customary for experienced linemen to use their safety belts when doing such work, but does not deny that Parsons gave the orders testified to by him. The contention of appellants is that appellee contributed to the injury by his method of doing the work and in not following Parsons' instructions. There was proof that it was bad practice in construction work to drive both lag screws before adjusting the cross arm to a horizontal line and that he should have levelled the cross-arm after partly driving in a single lag screw before attempting to drive the other, and that appellee negligently threw his weight on the cross-arm and while so doing struck the end of the cross-arm with his axe.

Where there is a safe way and a dangerous way to do work, both equally practicable, and the employe adopts the dangerous way there can be no recovery. Karr Supply Co. v. Kroenig, 167 Ill. 560. If the rules made by the master for the performance of work by employes are reasonable and practicable, and the employe is informed of the rules and then voluntarily adopts another or chooses a method in disregard of an express order, and is injured because of his dis-

regard of the rule of the master, he assumes the risk of injury and cannot recover. Campbell v. City of Clinton, 94 Ill. App. 43; 20 Am. & Eng. Ency. of Law 105 (2nd Ed.).

It is also insisted by appellants that the defect in the cross-arm was so obvious that the appellee, an experienced lineman, must have seen it and therefore he assumed the risk. Where a servant has equal means of knowledge of defects with the master, he cannot recover for injuries sustained because of such defect. Whether the defect was so obvious that the appellee must have seen it and whether he had equal means of knowledge with appellants were questions of fact for the jury, but they were defenses which could not be ignored. Appellants were required to furnish appellee with reasonably safe material with which to work, but if they furnished him with material so defective that he knew the danger of working with it then he assumed the risk and cannot recover.

Instructions numbers five, six and seven given to the jury at the request of appellee refer to the safety belt. Number five is:

"The court instructs the jury that if you believe from the evidence that an ordinarily prudent lineman accustomed to the work in which the plaintiff was engaged at the time of the accident, would have done the work the plaintiff was then doing without using a safety belt, then you may find that the plaintiff was exercising reasonable care for his own safety, even though he was not using a safety belt at the time of the accident."

Number six is very similar in language to the fifth. Number seven is:

"The court instructs the jury that if it was not usual and customary among linemen to use a safety belt in performing work such as the plaintiff was performing at the time of the accident, then it was not necessarily contributory negligence on the part of the plaintiff to work without a safety belt at that time and under those circumstances."

Number five is misleading and directs that the jury may find that the appellee was in the exercise of due care in doing the work without using the safety belt, and entirely ignores the facts of which there was proof that appellee was ordered not to work on poles without a safety belt, the claim made by appellant that appellee was guilty of contributory negligence in the way he drove the lag bolts and afterwards attempted to adjust the cross-arm, and the question of assumed risk if the defect was so obvious that appellee saw it. These three instructions were erroneous in emphasizing and repeatedly calling the jury's attention to the use of the safety belt and ignoring the other matters of claimed contributory negligence. Because of the error in the giving of these three instructions the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Mr. Presiding Justice DIBELL took no part in the consideration of this case.