## MARION STEAM SHOVEL CO. v. BERTINO et al.

### No. 10331.

Circuit Court of Appeals, Eighth Circuit.

May 7, 1936.

For former opinion, see 82 F.(2d) 541.

Elliott H. Jones, of Kansas City, Mo. (J. M. Strelitz, of Marion, Ohio, and William C. Scarritt, Edward S. North, and Arthur D. Scarritt, all of Kansas City, Mo., on the brief), for appellant.

Clay C. Rogers, of Kansas City, Mo. (O. C. Mosman, C. Jasper Bell, and Paul A. Buzard, all of Kansas City, Mo., Louis N. Wolf, of Joplin, Mo., Cornelius Murphy, Jr., of Kansas City, Mo., and Sylvan Bruner, of Pittsburg, Kan., on the brief), for appellees.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

Defendant has filed a petition for rehearing in which counsel reargue the entire case. The function of such a petition is defined and limited by rule 18 of this court. The rule, among other things, provides as follows:

"The sole purpose of a petition for rehearing is to call attention to material matters of law or fact inadvertently overlooked by the court, as shown by its opinion. Mere reargument of issues determined by the opinion will be entirely disregarded."

One matter is urged, however, which we think is deserving of attention. It is earnestly contended that a disposition of the case could not properly be made without determining whether Cleon Williams was at the time in question the servant of defendant, because, it is argued, the case was submitted to the jury on charges of negligence of both Titus and Williams, and that "the same were independent charges and independent grounds of negligence."

It is true that in the original opinion we declined to consider the contention that Williams was not an employee of defendant, saying that, "In view of our conclusions on the other issues, it is not necessary to consider whether Williams was an employee of defendant." As observed in our original opinion, "The appeal does not challenge the sufficiency of the evidence as to the negligence of Titus nor that plaintiff Bertino's injuries proximately resulted therefrom." The contention was not that Titus was not guilty of negligence, but that he was not defendant's servant. True, it was also contended that Williams was not defendant's servant. We determined that Titus was defendant's servant, for whose negligent acts it was responsible. Having determined that this relation existed at the time of the injury in respect to the very transaction out of which the injury arose, we were of the view that the mere fact that the act of Williams, even if he were a third person not an employee of defendant, may have contributed to the injury, would not exempt defendant from liability, and hence, when we determined the status of Titus, his causal negligence having been conceded, it was not necessary to consider whether defendant was also responsible for the contributing negligence of Williams. Chicago v. O'Malley, 196 Ill. 197, 63 N.E. 652.

On rehearing, defendant cannot for the first time be permitted to contend that Titus was not negligent, or that his negligence was not the proximate cause of plaintiff's injuries. These questions were waived on the original hearing and must be treated as abandoned. On the original hearing the sole questions directed to our attention were: First, the status of defendant's agents, and, second, the applicability of the Missouri Workmen's Compensation Act (Mo.St.Ann. § 3299 et seq., p.

8229 et seq.). One seeking a rehearing will not ordinarily be permitted to set up new grounds in support of his petition different from those urged by him on the original hearing. Reece Folding Machine Co. v. Fenwick (C.C.A.1) 140 F. 287, 2 L. R.A.(N.S.) 1094; A. F. Withrow Lumber Co. v. Glasgow Inv. Co. (C.C.A.4) 106 F. 363; United States v. Hall (C.C.A.1) 63 F. 472.

But we think counsel have misconceived the teaching of the instructions in so far as they refer to the negligence of Titus and Williams. On its own motion, the court charged the jury as follows:

"Now, your next inquiry would be first was there negligence on the part of Titus who was acting for the defendant, if you so find, in causing this dipper to drop with the result that Bertino's hand was cut off. The first inquiry, was there negligence in these particulars, particulars not mentioned in the petition; did he use a chain when he ought not use a chain, and if he used a chain was the chain an inadequate or insufficient one, and would a cable have been better; would a prudent man under the circumstances have used a cable? Moreover, it is charged he didn't warn this man of the circumstances that the chain might break; moreover, *it is charged that the dipper was suddenly jerked up with the result that it fell, that these were careless acts on the part of defendant acting through Ed Titus, if it were doing the work there.*" (Italics supplied.)

It is observed that all the acts of negligence referred to were submitted to the jury as the negligent acts of Titus. In an instruction given at the request of plaintiff, the jury was further charged:

"And if you further find that the defendant or Titus, acting for it, if so, negligently and carelessly used and employed a chain for the purpose of raising and turning the dipper mentioned in evidence, which said chain, if so, was too weak, light or insufficient or insecure for such purpose, if it was, or negligently and carelessly failed to use and employ cables to raise said dipper or negligently and carelessly placed the door on said dipper before attempting to raise the same, or negligently and carelessly ordered, directed or required the plaintiff Bertino, to work in and around said dipper and to push, shove, or move said dipper while the same was being hoisted by the use of the chain mentioned in evidence, *or negligently and care-*

*lessly caused said dipper to be suddenly and violently hoisted while plaintiff Bertino was pushing and shoving thereon,* if he was, and if you further find and believe from the evidence that the defendant, or its servant Titus, (if he was a servant of the defendant) knew, or by the exercise of ordinary care should have known that it was dangerous and not reasonably safe, if you so find, to attempt to raise said dipper by means of said chain or without the use of cables, and if you further find that as a direct result of this negligence and carelessness of the defendant, or its servant Titus (if he was such servant) in respect to any one or all of the foregoing acts or omissions, if any, the said dipper was caused to fall and the plaintiff, Bertino, was injured, then your verdict must be in favor of plaintiffs and against the defendant." (Italics supplied.)

Here, again, the acts of negligence, including the sudden and violent hoisting of the dipper, are charged as the acts of Titus. At least until the filing of this petition for rehearing, defendant has not questioned in this court that these negligent acts were committed by Titus. The question was not presented by any exceptions to the above-quoted instructions, but now it is urged that as to the sudden and violent hoisting of the dipper, the negligence was that of Williams alone. In view of the above-quoted instruction, this issue, to be available here, must have been raised below. It was not brought to the attention of the lower court either by exception to these instructions nor by motion for a directed verdict.

But if the contention that the defendant was not responsible for the acts of Williams be considered on its merits, we think it is not tenable. It is said that he was a mere volunteer. A Mr. Hines was the electrician assigned to and working on this job as an employee of defendant. Titus was the superintendent in charge of the erection or construction of this machine. He is referred to in the correspondence, and in the testimony, as "the erector." Hines was not called as a witness, but Williams, in his testimony, says:

"I was there and saw that it was desired to operate the machinery of the shovel, and I noticed that Mr. Hines, who was the electrician who was supervising the installation of the electrical equipment on this shovel, was down on the ground fixing some flood lights, as I remember it, so I

just took hold of the controls and operated the shovel *in answer to a signal given by the hand of Mr. Titus who was the erector in charge of this job.*"

He was brought out to this job on the day in question by Mr. Titus, and he says he went out there to look over this shovel, and that it was his custom, "When I have spare time and am in the vicinity where Marion equipment is being erected, to go out and look it over." He had been there the day before, and had gone over the shovel and made an inspection of it. Mr. Titus, in his testimony says:

"In preparation to placing this, I went in the machine, as Mr. Cleon Williams had volunteered, being voluntarily on the job, he volunteered to operate the shovel, as Mr. Hines, the electrician in charge of installing the electrical part of it, was busy, Mr. Williams volunteered to operate it while I did this work, and I stepped into the cab. He was sitting at the controls and we talked over the operation of putting it together, and Mr. Bertino was standing at the side of us, and I told him, etc. * * * When I gave the order to raise the heavy load, I knew that Cleon Williams was at the controls. I gave the order to him for him to operate the machine."

 It is implied in both the testimony of Titus and Williams that had Hines been at his post, it would have been his duty to operate the machine. Williams was in the employ of the defendant and had been engaged in the same capacity as Hines, but on another job which he had just finished. Williams was acting under the direct order of Titus, and Titus represented the defendant on this work in charge of construction. He did not employ Williams, but being already in the employ of the company in the capacity of an electrical engineer, Titus directed him to take the place of another of defendant's employees to perform the duty of such other employee. Williams was performing a duty of the defendant, and so far as defendant's liability to the plaintiff was concerned, it was a matter of no importance whether electrical engineer Hines or electrical engineer Williams, both experts in the employ of defendant, was on duty. Plaintiff was not responsible for the manner in which Williams was placed on duty. Even if Titus exceeded his authority in ordering Williams to operate the machine, the defendant, as between it and a third person, should be held responsible.

The question as to whether Titus had authority to order or direct Williams to act, not having been presented to the court below, nor, indeed, to this court until the filing of the petition for rehearing, cannot now be urged. A. F. Withrow Lumber Co. v. Glasgow Inv. Co. (C.C.A.4) 106 F. 363; United States v. Hall (C.C.A.1) 63 F. 472.

Titus as defendant's vice principal in charge of the work assigned Williams to the task of operating this hoist. So far as third persons are concerned, a master is liable for the acts of his servant in the course of his employment, even though the master did not authorize or know of the servant's mistakes or acts of negligence. P. F. Collier & Son Co. v. Hartfeil (C.C.A.8) 72 F.(2d) 625.

Other questions urged in the petition have been considered, but we think them without merit.

The petition for rehearing is therefore denied.