EMRICH FURNITURE COMPANY *v.* BYRNES.

[No. 6,457. Filed April 2, 1909. Rehearing denied June 11, 1909. Transfer denied October 7, 1909.]

1. TRIAL.— *Interrogatories.— Contradictions.—* Contradictory answers to interrogatories to the jury nullify one another. p. 343.

2. TRIAL.— *Interrogatories.— Inferences.—Evidence.—*In determining whether answers to interrogatories to the jury overthrow the

general verdict, all inferences are indulged in favor of such general verdict, and the actual evidence in the case cannot be considered. p. 344.

3. APPEAL.—*Weighing Evidence.*—*Mistakes of Jury.*—Mistakes of the jury in weighing the evidence or in arriving at a verdict upon the evidence cannot be corrected on appeal, where there is some evidence on all material allegations in support of the verdict. p. 344.

4. NEGLIGENCE.—*Accidents.*—*Evidence.*—In a negligence case, the plaintiff must show not only that he suffered an injury, but also that defendant's negligence was the proximate cause thereof, and that the risk was not assumed. p. 346. ˙

5. MASTER AND SERVANT.— *Assumption of Risk.*— *Unfastened Presses.*—*Danger of Falling.*—A servant who knowingly works with and about upright veneer presses which are not fastened to the floor assumes the risk of their falling upon him. p. 346.

6. MASTER AND SERVANT.—*Anticipation of Injury.*—A master is not liable for injuries the happening of which an ordinary person, in the exercise of reasonable care, would not have anticipated. p. 348.

7. MASTER AND SERVANT.—*Safe Place.*—*Tools.*—A master is compelled to exercise ordinary care to furnish to his servants a safe place in which to work, and safe tools with which to work. p. 348.

8. MASTER AND SERVANT.—*Proximate Cause.*—*Usual and Extraordinary Effects.*—A master is liable for accidents that naturally flow from certain conditions, but is not liable for extraordinary accidents. p. 348.

9. MASTER AND SERVANT.— *Safe Place.*— *Veneer Presses.*— *Loose Floor.*—A master is not liable for the fall of a narrow, heavy, upright, veneer press standing upon unfastened rails, where the falling was caused by the slipping of the rails from under such press, since such a result was neither reasonable nor probable. Hadley and Roby, JJ., dissenting. p. 350.

10. EVIDENCE.—*Slipping of Rails from Under Press.*—*Natural Laws.* —*Contradiction of.*—*Master and Servant.*—Where the plaintiff testified that the loose rails supporting a tall, narrow, heavy, unfastened, upright, veneer press spread, thus causing the press to fall upon him, and other witnesses testified that he pushed the press causing it to fall, and the jury found for the plaintiff, the Appellate Court will reject the plaintiff's evidence as being in conflict with natural law, the Court taking judicial notice that such rails could not spread without the plaintiff's causing them to do so. Hadley and Roby, JJ., dissenting. p. 350.

From Marion Circuit Court; *Henry Clay Allen,* Judge.

Action by John Byrnes against the Emrich Furniture Company. From a judgment on a verdict for the plaintiff for $1,500, defendant appeals. *Reversed.*

*John B. Elam, James W. Fesler* and *Harvey J. Elam,* for appellant.

*George W. Galvin* and *Elliott & Elliott,* for appellee.

RABB, J.—Appellee brought this action against appellant to recover damages for injuries alleged to have been sustained by him while engaged in appellant's service, and through the alleged negligence of appellant.

The complaint was answered by a general denial. There was a jury trial, resulting in a verdict in favor of appellee, and with the verdict the jury returned answers to interrogatories submitted to them. Appellant's motions for a judgment in its favor on the answers to interrogatories, and for a new trial, were overruled. These rulings of the court below are assigned as error here, and we shall consider them in their order.

It is insisted that the answers to interrogatories returned by the jury show that appellee failed to make out a case against appellant, because (1) the answers disclose that there was no evidence of negligence on the part of appellant proximately causing appellee's injury; (2) the interrogatories disclose that there was no evidence that the risk of the injury sustained by appellee was not an assumed risk of his employment; (3) that the answers to the interrogatories affirmatively show appellee to have been guilty of contributory negligence.

The answers to interrogatories in many respects, in which it is claimed they antagonize the general verdict, are neutralized by contradictions, and considering all the pre-

1. sumptions, inferences and intendments that are to be indulged in favor of the general verdict, and considering that the evidence actually given upon the trial of the cause cannot be considered in aid of the answers to the inter-

rogatories to supply any omission therein, or to rebut any presumption or inference that might be indulged in favor of the general verdict, we think that it cannot be said that the answers to the interrogatories so antagonize the general verdict as to entitle the appellant to a judgment in its favor thereon, and that no error intervened in overruling its motion.

One of the reasons assigned for a new trial is the insufficiency of the evidence to sustain the verdict, and this reason is pressed upon our consideration as one of the grounds for a reversal of the judgment. This court cannot relieve parties from mistakes made by the jury or court below in the determination of questions of fact; neither can it weigh the evidence. If there is any legal evidence to sustain the finding of the trial court or the verdict of the jury this court is bound to sustain such finding or verdict. But if there be no legal evidence to sustain such finding or verdict in favor of a party having the burden of the issue, such finding or verdict will require the reversal of the cause at the hands of the Appellate Court.

The evidence in this case discloses that the appellee was injured by the fall of a heavy iron frame, used in appellant's furniture factory for compressing veneered boards. The frame which fell upon appellee was about forty-two inches in height, about the same in length, and twelve inches in width. It had a solid iron platform for a base, with flanges extending outward from each end, about four inches from the bottom and at right angles with another flange extending downward about two inches. The top of the frame was connected with the bottom by four round iron rods or tubes, about two inches in diameter, one at each corner, and through the top three screws passed, which were used to compress the material veneered, between the plate on the screw and the platform of the frame. An iron plate extended down from the front of the base of the plate, in slightly elliptical form, until at the center it was apparently on a level with the bot-

tom of the lower flange on the frame. There was, at the time appellee was injured, twenty-four of these frames in use in appellant's factory. They all rested upon a wooden railway about thirty feet in length. The railway was composed of oak pieces from eight to twelve feet in length, and about four inches square, and the rails fitted into the angle formed by the flanges at each end of the frame. Each frame weighed about five hundred pounds, the top and base being of about equal weight. The frames were not attached to the rails, nor the rails to the floor, otherwise than by their own weight. The accompanying cut illustrates the character of the frame, and the manner in which it rested upon the rails, better than it can be described:

It is the theory of appellee's case that the appellant was guilty of negligence in failing securely to fasten the rails to the floor, and securely to fasten the press to the rails, and that by reason of such failures the press slipped or worked off the rails, and thereby lost its balance and fell over on the appellee, while he was engaged in his work about the frame.

It was incumbent on the appellee to establish not only that the accident happened and that he was injured, but also that the accident was the result of some negligent act or omission on the part of appellant, and that the injury did not arise from a risk assumed by the appellee.

The evidence further shows that the press which fell upon and injured the appellee, was, at the time of the accident, being used in connection with three other presses that stood about four inches apart; that all the presses were alike, and they were used in appellant's factory to press 'veneered boards varying in length from one foot to six or seven feet; that for this purpose the presses were required to be moved about on the rails to accommodate the length of board required to be pressed.

The testimony of appellee's witness Koerner, is to the effect that the presses could be nested together in bunches of from two to four or five, and remained in one place sometimes two hours, sometimes half a day, and sometimes for a much longer time. This particular bunch of presses that was being used together at the time of the accident had been loaded the night before, with a stack of drawer fronts about eighteen inches in height, four feet in length, and a foot in width, and the press put upon them. The appellee had been engaged in appellant's service for about four months. The duties of his employment required him to work with and about these presses daily. They were the ordinary implements of his employment. There was nothing about the press that he did not have every opportunity to know. Its form, size and construction, and its liability, if there was any, to be easily overturned, were all

open and plainly visible to him. He knew that the presses were not firmly attached to the rails, for he had helped to move them about upon the rails.

It is pointed out that there were holes in the flanges of the presses, indicating that they were intended to be fastened to the rails upon which they rested, and it is argued, therefore, that appellant was guilty of negligence in not bolting them to the rails. The appellee testified that he knew these holes were in the flanges for the bolts to go through. He had every opportunity to know that the holes were there. His daily employment about and with the machines gave him such opportunity to have full information upon this subject. Knowing that the holes were there, he necessarily knew they were not filled with bolts. By seeing the machines moved, as the evidence introduced by appellee shows they were, and by helping to move them himself, he had positive knowledge that they were not attached to the rails by bolts or screws, or in any other manner. The evidence shows conclusively that the appellee knew all there was to know with reference to the danger of the falling of the press upon him, arising from its size, weight, form, and the fact that it was not firmly attached to the rails. Under the well-settled rules of law, these risks were, therefore, assumed risks of his employment. Not only is this so, but the evidence introduced by appellee affirmatively shows that from the necessity there was of moving these presses about, and nesting them together to accommodate the size of the stuff to be pressed, made it impracticable to bolt them or otherwise firmly to attach them to the rails on which they rested.

Of the alleged dangers arising from the use of the presses by appellee, the evidence justified a finding that there was only one which the appellee did not know of and assume as a part of the risks of his employment, and that one arose from the fact that the rails were not firmly attached to the floor. The evidence showed that the rails were not attached to the floor, and it justified the finding that appellee did not

know of this fact, and that the circumstances were such as not to impute knowledge to him; and the only possible ground upon which the verdict of the jury in this case can be upheld is that the appellant was guilty of negligence in not securely fastening the rails to the floor, and that they spread apart and let the press fall on appellee while he was in the act of unloading it.

The loading and unloading of the presses involved no shifting or moving of the presses. All that was required to be done in loading and unloading them was simply

6. to lay the boards upon the presses, as they stood on the rails, turn the screws down upon them, loosen the screws, and take the boards off. The negligence of the appellant is not necessarily established by proof that the rails were not securely fastened to the floor, and for that reason they spread apart and let the press slip off and fall on the appellee. Whether this omission was an act of negligence depends upon whether or not the accident alleged to have resulted, or one of similar character, was such as a reasonable person ought to have anticipated would or might happen from the conditions. An employer is bound to

7. exercise reasonable care to provide his employes with a safe place in which to work, and with safe implements to work with, and to exercise reasonable diligence to keep them in a safe condition. This duty requires that he shall anticipate all such dangers as reasonably and naturally flow from the conditions of the place in which his employes work, and the appliances for work with which they are furnished. The same rule defining negligence applies to

8. an employer of servants that applies to all other persons in all other relations of life, and that is, that those who are responsible for the conditions are bound to know of the consequences that naturally and reasonably flow from them. But neither an employer of servants, nor any other person in any other relation of life, is bound to foresee and provide against the happening of extraordinary ac-

cidents. *Enochs* v. *Pittsburgh, etc., R. Co.* (1896), 145 Ind. 635; *New York, etc., R. Co.* v. *Perriguey* (1894), 138 Ind. 414; *McGahan* v. *Indianapolis Nat. Gas Co.* (1895), 140 Ind. 335, 29 L. R. A. 355, 49 Am. St. 199; *Nickey* v. *Steuder* (1905), 164 Ind. 189; *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413; *Lane* v. *Atlantic Works* (1872), 111 Mass. 136; *Stone* v. *Boston, etc., R. Co.* (1898), 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794; Wharton, Negligence (2d ed.), §776; Pollock, Torts (4th ed.), 30-39; 1 Cooley, Torts (3d ed.), 124, 125; *Billman* v. *Indianapolis, etc., R. Co.* (1881), 76 Ind. 166, 40 Am. Rep. 230; *Terre Haute, etc., R. Co.* v. *Buck* (1884), 96 Ind. 346, 49 Am. Rep. 168.

In the case of *Chicago, etc., R. Co.* v. *Dinius* (1908), 170 Ind. 222, the Supreme Court said in reference to this question: ''The rule well affirmed by the authorities is that under the law a person is required to anticipate or foresee and guard against what usually happens or is likely to happen, but this rule does not require him to anticipate or foresee and provide against that which is unusual and not likely to happen, or, in other words, that which is only remotely and slightly probable. The general test in such cases is not whether the injurious result or consequence was possible, but whether it was probable, that is, likely to occur according to the usual experience of persons.''

Was it reasonable or probable that an accident, such as the appellee claims happened in this case, would occur; that is, that while the presses were being unloaded the rails would spread from under them and let them fall? Was the appellant bound to anticipate that such an accident would occur? If it was, then it was the duty to have fastened the rails securely to the floor. But if such accident was not likely to happen, then appellant was not guilty of negligence in failing thus to secure them.

The evidence discloses that these frames were usually used in what·was called ''nests,'' three or four frames set to-

gether to accommodate the size of the material to be pressed. They were not designed, as wheeled vehicles would be, to be run back and forth over the rails. They were moved very slowly, about an inch at a time, when they were moved at all, as the evidence discloses they frequently were. The rails themselves and the manner in which the frames rested upon them were plainly visible to all persons who had occasion to be around them. Their great weight and the manner in which they rested upon the rails were amply sufficient to hold the rails solidly to the floor, and to hold the frames solidly upon the rails. The only likelihood of the rails' coming out from under the frames was at times when they were moved, and then those engaged in moving them could not help seeing any displacement of the rails. There is no evidence that any accidents had ever happened from these rails' spreading under these frames, and letting any of them fall. There is no evidence that any of them ever did fall off the rails, unless it could be said that the evidence in this case establishes the fact that this accident happened from the rails' spreading, as appellee contends. It was not reasonable or probable, and therefore not to be anticipated, that the rails on which the frames rested would, of their own volition, slip from under the heavy iron frames, and it was not negligence on the part of appellant to fail to foresee such a result and provide against it.

We think, too, that the evidence proper to be considered shows without conflict that the accident happened because the appellee pulled the iron frame over on himself, that the rails did not spread, and that a displacement of the rails had nothing to do with the accident.

The appellee's account of the accident is that after he had loosened the screws on the press, and while standing on the frame in front of the press that fell upon him, he felt the rails spreading under his foot; that he stepped down in front of the press, and was just in the act of taking the cover off the veneered boards in the press, pre-

paratory to removing the load, when the press fell upon him and injured him, rendering him unconscious, and that the load was yet in the press when it fell. Witnesses who were assisting the appellee in removing the boards were introduced by appellant, and they testified that the accident occurred in this manner: That after the appellee had loosened the screws he stepped down in the track between the rails, took hold of the top of the frame, and with his feet pushed the whole load through the presses; that the moment the load was pushed off the first press, it upset with the appellee, who fell back in the track, and the press fell upon him. The only eyewitness to the transaction, besides himself, introduced by the appellee, testified that as he saw the accident the appellee was, at the time the press fell, pushing the load of boards with one hand, while with his other hand he was holding the frame of the press, when it fell. The jury find, in answer to interrogatories, that, at the time the press fell, the appellee had pushed the load of boards off the press, and had hold of the frame of the press with one hand, but did not push it with his feet. All of the eyewitnesses to the occurrence—those who saw the condition of the press immediately after it fell, and when it did fall, and who lifted it up off the appellee after he had fallen, and knew of the facts with reference to which they testified—say that the rails did not spread apart, and that the press, when raised up, settled back to its place upon the rails, the only possible conflict in this evidence being the testimony of the appellee, that he felt the rails spreading under his feet while he stood on the frame. He does not pretend to know that the rails spread. He did not see them. He assumed that they spread on account of some sensation he felt while standing on the frame of the press. If this could be said to be in conflict with the otherwise uncontradicted evidence, we think it should be rejected as being in conflict with natural laws. It is a physical impossibility that these rails, without any lateral force to push them apart, should slip

out from under these heavy presses, which bore down upon them with the weight of over a ton, in a space of less than five feet. The testimony of a witness which conflicts with natural law is not legitimate evidence, and cannot be considered. *Lake Erie, etc., R. Co.* v. *Stick* (1896), 143 Ind. 449.

Judgment reversed, with instructions to the court below to grant a new trial.

Watson, C. J., Comstock, P. J., and Myers, J., concur.

## DISSENTING OPINION.

HADLEY, J.—I cannot concur in the opinion of the majority of this court. The record shows that there was evidence to support every material averment of the complaint; that the manner of the accident, as testified to by appellee, was not one of the risks assumed by him, and that he was not contributorily negligent. Whether his story was true, or whether it was wholly overthrown by other evidence, were questions for the jury.

Neither can I agree that it was a physical impossibility, measured by natural laws, for the accident to have occurred, as claimed by appellee. In the very nature of things this rule should not be invoked except in the clearest cases, and where the facts disclose such natural impossibility beyond any doubt.

The record shows that the machines were made with holes in the base for the purpose of providing means for securely fastening them by bolts and screws to whatever they rested upon. This indicates that the manufacturers of the machines anticipated that there was a necessity for them to be so fastened. The record shows that the scantlings, upon which the presses rested, were not nailed down, and frequently worked out from under the presses, either on account of the vibration of the building, caused by operation of the machinery therein, or by the movement of the presses, caused

by the employes' placing and removing the veneering, and fastening and unfastening the screws. A foreman of appellant testified that he had observed this, and had driven them back in place, and otherwise replaced them as best he could. It certainly was appellant's duty to make them secure, and appellee had a right to assume that it had done so. The record shows that appellee had no knowledge of this tendency of the scantlings.

The jury has passed upon all these questions. There is nothing in the record that shows that it was not composed of unbiased, fair-minded men. Their findings upon these questions of fact are binding upon us.

I therefore dissent.

Roby, J., concurs in the dissenting opinion.