## CONNOR *v.* JONES

[No. 17,271.   Filed March 1, 1945.   Rehearing denied
April 12, 1945.   Transfer denied May 22, 1945.]

662

664

*Albert Stump* and *Leo X. Smith,* both of Indianapolis, for appellant.

*Armstrong & Gause,* of Indianapolis, for appellee.

CRUMPACKER, J.—The appellee recovered judgment in the Marion Superior Court against the appellant in the sum of $5,000 as compensation for personal injuries resulting from the alleged negligence of said appellant in the operation of an automobile. The trial court is charged with error in three particulars: (1) In overruling appellant's motion for a new trial; (2) in failing and refusing to weigh the evidence in passing upon said motion for a new trial; and (3) in refusing to sign appellant's bill of exceptions No. 3 and to order it filed and made a part of the record.

Shortly before this appeal was lodged with us the appellant filed a petition for a writ of mandamus directed to the trial judge and ordering him to sign bill of exceptions No. 3 and make the same a part of the record in this case. We refused to issue such writ and in a written decision fully discussed

the propriety of the relief sought. *State ex rel. Ernest L. Conner v. Pritchard* (1944), ante, p. 55, 54 N. E. (2d) 283. Thus having heretofore decided that the matters set out in said bill of exceptions No. 3 could not properly be made a part of the record, we must of necessity hold that the trial court committed no error in refusing to sign the same.

The appellant relies wholly upon said bill of exceptions No. 3 to support his second assignment of error and, without such bill in the record, there is nothing to indicate that the trial court, in ruling on the motion for a new trial, failed to weigh the evidence and determine for itself where the preponderance thereof rested.

In the absence of a showing to the contrary, it must be presumed that the trial court faithfully discharged its duty in that respect, *Dulin* v. *Long* (1944), ante, p. 94, 54 N. E. (2d) 652, and the overruling of the motion for a new trial was, in effect, a determination by the trial court that the weight of the evidence justified the verdict. *State ex rel. Winslow* v. *Fisher, Clerk* (1941), 109 Ind. App. 644, 37 N. E. (2d) 280.

There remains for consideration the questions presented by the motion for a new trial which charges: (1) The verdict is not sustained by sufficient evidence; (2) the verdict is contrary to law; (3) the damages assessed by the jury are excessive; and (4) the court erred in giving certain instructions tendered by the appellee and in refusing to give certain others tendered by the appellant. The question of excessive damages has been specifically waived and therefore will not be discussed.

An intelligent disposition of the proposition that the verdict of the jury is not sustained by sufficient evidence

requires a brief review thereof, or at least of that portion of the evidence which is most favorable to the appellee. East Michigan Street is a public thoroughfare in the City of Indianapolis running due east and west and, along its length and in about its center, Indianapolis Railways, Incorporated, maintains a double line of car tracks over which it operates streetcars in opposite directions, those bound east using the south track and those going west using the north track. Beville Avenue runs into Michigan Street at right angles from the south and then jogs approximately 118 feet to the east where it leaves Michigan Street and continues due north. Indianapolis Railways, Incorporated, stops its Michigan Street cars, to take on and discharge passengers, at a point approximately in the middle of said jog, where it maintains a "Car Stop" sign suspended on a wire over its tracks.

On December 4, 1941, at about 6:30 P. M. the appellee was standing on the southwest corner of Michigan Street where Beville Avenue joins it from the south. It was a dark night and there was a slight mist or rain in the air. The appellee was not familiar with the neighborhood and had not noticed the sign indicating the place where cars stop, although he had gotten off a streetcar at that point earlier in the day. He had chosen this corner to wait for an east-bound car because it seemed the logical place for the purpose but he was not sure that a car would stop for him there. The intersection of Michigan Street and Beville Avenue is in a closely built up business and residential section of Indianapolis and traffic along Michigan Street at 6:30 in the evening is generally heavy. While so standing on the corner above described, the appellee saw a streetcar approaching from the west about one-half block away and he thereupon walked into Michigan

Street along approximately the middle line of the crosswalk as indicated by the lines of the sidewalk on Beville Avenue extended north. He walked to a point within two to four feet of the tracks and waved his hand for the purpose of stopping the car which was then about 20 feet away and slowing down. At this moment the appellant, who had been driving his automobile astride the south rail of the tracks, approached said streetcar from the rear and swung out and by it to the south and directly toward the appellee at a speed of 40 to 45 miles per hour. The appellee attempted to jump back and out of the path of said automobile but its right-hand headlight struck him and, as the result thereof, he was severely injured. When he was hit the front door of the streetcar, which had slowed down almost to a stop, was just about even with or opposite his position in the crosswalk. The evidence also establishes the fact that at the time of the accident there were two ordinances of the city of Indianapolis in full force and effect, one of which provides that the operators of motor vehicles shall yield the right of way to pedestrians crossing roadways within the lines of a crosswalk, and the other provides that the operator of a vehicle overtaking any streetcar, stopped or about to stop for the purpose of receiving or discharging any passenger, shall stop such vehicle at a distance not less than six feet from the rear thereof and shall keep such vehicle stationary until such passenger has boarded such car or reached a place of safety.

The appellant assails these facts as being insufficient to support the verdict against him for several reasons: First, he says the appellee's version of how the accident happened is incompatible with the physical facts involved and therefore must be disregarded. It is well settled in this jurisdction and else-

where that the testimony of a witness which is opposed to the laws of nature, or which is clearly in conflict with principles established by the laws of science, is of no probative value and a jury is not permitted to rest its verdict thereon. *Lake Erie and Western Railroad Company* v. *Stick* (1896), 143 Ind. 449, 41 N. E. 365; *Emrich Furniture Co.* v. *Byrnes* (1909), 44 Ind. App. 341, 87 N. E. 1042; *Wabash R. Co.* v. *McDoniels* (1915), 183 Ind. 104, 107 N. E. 291; 20 Am. Jur., Evidence, §§ 1183 and 1184. This rule is frequently applied to the testimony of one who says he looked but did not see an object, which, if he had looked, in the very nature of things, he must have seen. However, where a court cannot say as a matter of law that the testimony of a witness is contrary to scientific principles, the law of nature or the physical facts, the question of whether such testimony does so conflict is one of fact for the jury to determine. *Fleming* v. *Northern Tissue Paper Mill* (1908), 135 Wis. 157, 114 N. W. 841, 15 L.R.A. (NS) 701. See Annotations, 21 A.L.R. 145, 7 L.R.A. (NS) 357, 15 L.R.A. (NS) 701, 28 L.R.A. (NS) 648, L.R.A. 1916 D. 301.

The appellant has made certain mathematical calculations based on distances and speeds as appear in the testimony of the appellee and seeks to demonstrate thereby that the appellee would have reached the curb in safety before the appellant's automobile reached any point in the street where the appellee possibly could have been hit. Therefore, says the appellant, the appellee's testimony concerning the manner in which the accident happened must be disregarded because it contravenes the law of mathematics and being so disregarded there remains no evidence to support the verdict. This argument presupposes that the appellee's estimates of the distance he was from the

curb when he first saw appellant's automobile, the distance it was then from him and the speed at which it was moving, are accurate to a mathematical certainty. This, of course, we cannot assume. His testimony in reference to distances and speeds was merely the expression of his best judgment in regard thereto and may have been subject to some error. The speed at which the appellant's automobile approached the place of the accident, as measured in miles per hour, is of little consequence if, in view of all the circumstances, it was then being driven faster than was ordinarily careful and prudent. We are of the opinion, therefore, that the question of whether the appellee's version of the manner in which he was run down and hit is contrary to scientific principles and incompatible with the physical facts is not one of law and we are not at liberty to disturb the jury's finding in reference thereto.

Among other things the appellant is charged with having driven his automobile, at the time and place of the accident, at a high and dangerous rate of speed. We have the testimony of two witnesses that such speed was 40 to 45 miles per hour. It is conceded that at the time of the accident it was dark and there was a mist or drizzle in the air. The place of the accident was in a closely built up section of Indianapolis accommodating both residences and business establishments. Under our statute governing the speed at which vehicles may be driven upon city streets a speed of 40 to 45 miles per hour, under the circumstances here involved, is negligence *per se.* § 47-2004 (c), Burns' 1940 Replacement. The appellant says, however, that the testimony in reference to speed is erroneous or the appellee is mistaken as to his estimate of distances, as otherwise the accident could not have happened. Thus he contends that "when a plaintiff pro-

duces evidence that is consistent with a hypothesis that the defendant is not negligent, and also with one that he is, his proof tends to establish neither." *Ewing* v. *Goode* (1897), 78 F. 442, cited with approval in *McCoy* v. *Buck* (1928), 87 Ind. App. 433, 157 N. E. 456. We have examined both the Ewing and McCoy cases and find no such application of the above rule as the appellant seeks. Both were suits against physicians for alleged malpractice. In the Ewing case an expert testified that the condition of the plaintiff's eye might be due to negligent treatment or to several other causes. Such evidence was held to prove nothing because if the eye condition was due to negligence there was liability, but if due to other causes there was none. In the McCoy case the principle has no application whatever and appears there only because it is a part of a quotation the court saw fit to use as authority on certain phases of the law concerning the probative value of expert testimony. In the present case any discrepancies in the appellee's evidence can readily be reconciled with the hypothesis that the appellant was negligent and we are therefore of the opinion that the rule under discussion has no application.

There is ample evidence to support a finding that at the time and place of the accident, and under all the circumstances surrounding it, the speed at which the appellant drove his automobile constituted negligence and that such negligence was the proximate cause of the accident. That being true, it becomes immaterial whether or not there is evidence in the record tending to prove the other charges of negligence set out in the complaint and it is unnecessary for us to discuss appellant's contentions in reference thereto.

It is next contended that the evidence most favorable to the verdict discloses contributory negligence on the

part of the appellee. In support of this contention the appellant makes the flat assertion that when the appellee went into the street for the purpose of stopping a streetcar at a place where it did not customarily stop for the purpose of taking on passengers, as it is conceded he did, he was thereby guilty of contributory negligence as a matter of law. We are referred to *Mishler* v. *Chicago, etc., R. Co.* (1919), 188 Ind. 189, 122 N. E. 657, as authority for this proposition but upon examination of the case we are unable to so construe the holding. The plaintiff sought to recover against the defendant, as a common carrier, for an alleged breach of its duty to him as a passenger. The decision goes no further than to say that if a person attempts to board a car at a place where it does not regularly stop, and while it is in motion, misses his footing and falls to his injury, he cannot be regarded as a passenger and the carrier owes him no duty as such. The question of contributory negligence in that connection is not discussed. It is a matter of common knowledge and experience that east-bound streetcars ordinarily stop at the southwest corner of street intersections to discharge and take on passengers. We do not think that one who so assumes and acts can be charged with contributory negligence as a matter of law, simply because it appears that in the particular instance involved, the streetcar did not regularly stop at such corner. Here, of course, we have the additional fact that the appellee, earlier in the day, had alighted from an east-bound car at the regular stopping place, but we attach no significance to that fact further than to say that it is a circumstance the jury might consider in determining the care the appellee exercised for his own safety.

Also as pertaining to the question of contributory negligence the appellant invokes the provisions of § 47-2032 (a), Burns' 1940 Replacement. This statute reads as follows: ". . . No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield." The appellant contends that assuming the appellee was standing from two to four feet from the car tracks, as he said he was, when the appellant swerved his automobile out and around the approaching streetcar, all the appellee had to do was to stand still and he would not have been hit, but on the contrary he left such position of safety and attempted to get back to the curb. The situation, as disclosed by the evidence, does not appear to us as quite that simple. The appellee testified that appellant's car was coming directly toward him. That being so, if he moved to the north he would be endangered by the approaching streetcar. Being confronted by sudden peril he may not have acted to his best interests, but whether his conduct under the circumstances amounted to contributory negligence was clearly a question for the jury to determine.

Still further on the question of contributory negligence the appellant insists that according to the appellee's version of the accident there was no reason he could not have seen the automobile as it followed the streetcar toward the intersection. As he stood on the curb he saw the streetcar and is therefore charged, as a matter of law, with having seen the automobile which was just behind it and in no manner obscured from his view but, heedless of what he saw, he entered the street and placed himself in the path of said automobile. Conceding all this, we do not believe it establishes contributory negligence as a matter

of law. Before the appellant made any attempt to go out and around the streetcar the appellee had already gone into the street waving his hand at said streetcar which was gradually slowing down and had almost stopped when the accident occurred. We think that the question of whether the appellee was guilty of contributory negligence in proceeding into the street on the assumption that the appellant would not attempt to pass the streetcar under the circumstances is one of fact and not of law. It is ingrained in the jurisprudence of this state that contributory negligence is ordinarily a question of fact for the jury and it is only where the controlling facts are not in dispute and are susceptible of but one conclusion upon the part of reasonable men that the question becomes one of law for the court. *Vogel* v. *Ridens* (1942), 112 Ind. App. 493, 44 N. E. (2d) 238; *Dulin* v. *Long, supra; Baltimore & Ohio R. Co.* v. *Reyher, Admx.* (1940), 216 Ind. 545, 24 N. E. (2d) 284. We find no such situation in the present case.

The appellant next complains of the court's refusal to give his tendered instructions Nos. 7, 9, 10, 16, 17 and 18. His instruction No. 7 defines proximate cause and explains the necessity of a causal connection between the appellant's negligence, if proven, and the appellee's injury to support a verdict for the appellee. This entire subject matter is fully and adequately covered in instructions Nos. 6 and 10, given by the court upon its own motion.

Appellant's instruction No. 9 deals with the "pure accident" doctrine. This same subject is accurately covered by the court's instruction No. 11 and with much less elaboration than appears in that tendered by the appellant. In our opinion the instruction given is the better of the two, as it contains nothing that might tend to confuse the lay mind.

Appellant's instruction No. 10 defines the rights of persons rightfully on a public street and then proceeds as follows: "So in this case if you believe that the defendant was driving his automobile at the time and place alleged and assumed that the plaintiff would not suddenly walk against his car or in the path of it, but would permit the defendant to drive on past where the plaintiff was; and if you further believe that the plaintiff, in the failure to exercise due care, walked against or into the path of the defendant's car, then the defendant would not be guilty of negligence merely because he did not anticipate such conduct on the part of the plaintiff." The portion of this instruction which we have not set out verbatim is an accurate statement of the abstract law with which it deals but the application of such law to the facts in this case, as quoted above, we believe is erroneous. It tells the jury that if the appellant assumed that the appellee would exercise ordinary care for his own safety, the appellant could not be charged with negligence in failing to anticipate that the appellee would not do so and entirely ignores the hypothesis that such presumption cannot be indulged except in the absence of facts or circumstances indicating the contrary. The instruction was properly refused.

Appellant's tendered instruction No. 16 deals with the right of a traveler on a public street to presume that others on the street will obey the law and use due care for their own safety. His instruction No. 17 defines the law of contributory negligence. He contends that it was error to refuse each of these instructions because those given on the same subject, while accurate, are mere statements of abstract principles of law with no specific application to the particular facts in the case. We agree that "the purpose of in-

structing jurors is to advise them of the particular question which they are to decide and to inform them how to apply the law to the concrete facts of the case." *Snyder* v. *Stanley* (1922), 77 Ind. App. 253, 133 N. E. 512. See also *City of Chicago* v. *O'Malley* (1902), 196 Ill. 197, 63 N. E. 652. We further believe the practice of giving instructions which state mere abstract propositions of law without specific application is of little value to a jury and is not to be approved, though the error is harmless if the abstract proposition set out in the instruction is a correct statement of the law. The difficulty with the appellant's position in the present instance is that his instructions Nos. 16 and 17, although longer and more prolix, are no more specifically applied, by way of hypothesis, to the facts in this case than are those of the court on the same subject. We see no error in their refusal.

We quote from appellant's tendered instruction No. 18 as follows: "If you believe that the ordinarily cautious and prudent person in the exercise of reasonable care for his own safety under all the circumstances would have stopped at the curb east of Beville Avenue where the regular car stop was to wait for a streetcar going east and from that point would have gone into the street to get on the streetcar, then the plaintiff was guilty of negligence in going to the east of Beville Avenue, waiting at the curb there for an east-bound car, and going into the street at that point to get on the car." We think this instruction is clearly erroneous and there was no error in its refusal. If given, it might very well have led the jury to believe that because the appellee waited and attempted to stop a streetcar at a place other than where it usually stops, his conduct, for such reason alone, was negligent. We have been referred to no authority supporting such a

proposition and have been unable to find any. Such conduct alone could not possibly have been the proximate cause of the appellee's injury unless we indulge in the fallacious reasoning that except for such conduct the appellee would not have been at the place where the accident occurred.

Over the appellant's objection the court gave the appellee's tendered instruction No. 1, which we quote as follows: "The court instructs the jury it was the duty of the defendant driving the machine as he approached the plaintiff, to exercise ordinary care to avoid collision with any person who might be traveling upon the street, and that duty included the duties of keeping a lookout, of giving reasonable and timely warnings of the movement of the machine by the usual and customary signals, and to operate his machine at a reasonable rate of speed, so as to have it under such control as that he might, by the exercise of ordinary care, avoid a collision with any person who might be upon the street."

It is contended that this instruction is an invasion of the province of the jury in that it is an arbitrary statement of things it was necessary for the appellant to do to bring his conduct within the scope of the rule requiring the exercise of ordinary care. In *Pittsburgh, etc., R. Co.* v. *Arnott, Admx.* (1920), 189 Ind. 350, 362, 126 N. E. 13, 17, the Supreme Court said: "It has been consistently held by recent rulings of this court that it is an invasion of the province of the jury to give an instruction stating that the doing of a certain specific act, or that the failure to observe a certain specific precaution, under a given state of conditions and circumstances, constitutes negligence, unless the specific act is prescribed by some statute, ordinance, order, or rule which gives it the force of law; or unless

the specific conditions and circumstances are of such character that no other reasonable inference can be drawn therefrom.". Followed in *Fields* v. *Hahn* (1944), ante, p. 365, 57 N. E. (2d) 955. The appellant complains first that it was error for the court to say that the appellant's duty to exercise ordinary care includes the duty to keep a lookout. It seems to us that when one drives an automobile along a busy city street on a dark and misty night the inference is irresistible that ordinary care demands that he keep a lookout for other travelers on the highway. Second, the appellant contends that it was not his duty to give warning of his approach by the usual and customary signals. Sec. 47-513, Burns' 1940 Replacement, provides that: "In approaching a pedestrian who is walking or standing upon the traveled part of any highway, and not upon a sidewalk, and upon approaching an intersection or curve or a corner in a highway where the operator's view is obstructed, every person driving or operating a motor vehicle or motor-bicycle shall slow down and give a timely signal with the bell, horn or other device for signaling." Under the facts in this case and the rule laid down in *Pittsburgh etc., R. Co.* v. *Arnott, Admx., supra,* the instruction in question is justified. But, says appellant, the statute above quoted has been superseded by § 47-2229, Burns' 1940 Replacement, which provides, among other things, as follows: "The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon the highway." These two statutes are not incompatible. The first is a special statute detailing circumstances under which a signal must be given while the second is general in its character and applies only to circumstances not covered by the first. Each can be given full force and effect with-

out doing violence to the other. The instruction under discussion is applicable to the appellee's theory of the case and to evidence in support thereof and, therefore, was properly given.

The appellee's tendered instruction No. 2, given by the court over the appellant's objection, characterizes as negligence the violation of a city ordinance requiring a motorist to yield the right of way to a pedestrian crossing a street within the confines of a crosswalk. The objection to the instruction is that it is not applicable to the evidence in this case in that the appellee, by his own admission, was not crossing or intending to cross the street but went and intended to go only so far across as would enable him to board a streetcar. We are not impressed with this argument. It was clearly the purpose of the ordinance to protect pedestrians using crosswalks at street intersections for legitimate purposes and it can be no concern of a motorist whether such pedestrian intends to proceed all the way across the street or not. What the pedestrian does may have some bearing on the question of contributory negligence but the motorist's duty is fixed by the ordinance.

A second ordinance was made the subject of appellee's tendered instruction No. 3, which was given by the court over the appellant's objection. The ordinance in question requires a motorist to stop at least six feet to the rear of a streetcar that has stopped or is about to stop for the purpose of receiving or discharging a passenger and remain stationary until such passenger has boarded the car or reached a place of safety. The instruction declares a violation of this ordinance to be negligence and, if such negligence is found to be the proximate cause of appellee's injuries, authorizes a recovery provided the appellee is free from con-

tributory negligence. Appellant's objection is to the effect that the undisputed evidence discloses that the streetcar had not stopped nor was it about to stop for the purpose of taking on or discharging passengers at the place where the appellee stood and therefore the instruction is inapplicable. The ordinance in question does not limit a motorist's duty to regular stops only. It is undisputed that the southwest corner of Michigan and Beville streets was not a regular streetcar stop, and we have the testimony of the motorman that he did not intend to stop there. Against this there is the testimony of the appellee and another that the appellee stood in the crosswalk near the car tracks and waved his hand at the streetcar which slowed down and had almost stopped with the front end thereof about opposite or even with the appellee when he was hit by the appellant's automobile. From these facts the inference reasonably flows that it was the intention of the motorman to stop for the appellee although it was not a regular stopping place. The instruction is in accordance with the appellee's theory of liability and there is evidence to which it is applicable. It leaves to the jury the question as to whether the motorman was about to stop the streetcar for the purpose of picking up a passenger and, if it so found, the ordinance was effective and the appellant's duty was clear. It is our opinion that the instruction was properly given.

Finally we are asked to set aside the judgment herein upon the broad sweeping principle that the record, in its entirety, presents a picture of justice miscarried to a degree that an aged man, who had no insurance, will lose his all without fault of his own but wholly through the negligence of the appellee for whom the jury had such sympathy that it lost perspective. We commend the zeal with which coun-

sel represents his client and recognize that to him, in his enthusiasm for the cause he advocates, this case may present such a picture. To us, however, the case presents a factual situation upon which the jury might very well have returned a verdict either way in accordance with where it found the preponderance of the credible evidence rested and, on the face of a record that discloses no error of law, we must affirm the judgment.

Royse, J., not participating.

NOTE.—Reported in 59 N. E. (2d) 577.

ON PETITION FOR REHEARING.

CRUMPACKER, J.—In his petition for a rehearing of this appeal the appellant charges us with error in considering the case of *State ex rel. Ernest L. Conner* v. *Pritchard* (1944), *ante,* p. 55, 54 N. E. (2d) 283, as decisive of the question presented by his third assignment of error, to-wit: The trial court erred in refusing to sign appellant's bill of exceptions No. 3 and order it filed and made a part of the record. Our holding in that respect was to the effect that having decided in the Pritchard case "that the matters set out in bill of exceptions No. 3 could not properly be made a part of the record, we must of necessity hold that the trial court committed no error in refusing to sign same." Notwithstanding appellant's insistence we are unable to see how a trial court can be charged with error in refusing to make certain transactions a part of the record in a cause by way of a bill of exceptions, which transactions constitute no part of the trial of such cause and have no legitimate place therein.

The appellant now seeks to restrict the Pritchard decision to holding that bill of exceptions No. 3 "could not

be made a part of the record by a writ of mandamus." In other words, we understand appellant's present position to be that the Pritchard decision, limited to the issues involved, goes no further than to say that mandamus is not the proper remedy to bring a bill of exceptions into the record and that, therefore, the question as to whether the trial court erred in refusing to sign the same and order it made a part of such record, is still open. We do not believe the Pritchard decision can be twisted into any such erroneous holding. Certainly mandamus is a proper remedy if a trial court refuses to do its duty in settling and signing a proper bill of exceptions. The Pritchard case was decided on its merits and the writ was denied because the trial court was right in refusing to bring matters into the record that had no proper place there.

We are next charged with error in holding that, with bill of exceptions No. 3 excluded, there is nothing in the record indicating that the trial court failed to weigh the evidence in passing upon the appellant's motion for a new trial. This contention is predicated upon the theory that, while bill of exceptions No. 3 is not in the record as a bill of exceptions, it is there as a "record document" because the court made an orderbook entry of its refusal to sign the same. Counsel's argument in support of this contention reaches such heights of ingenuity that we quote the same verbatim: "But there is a record here without any bill of exceptions. The court below entered an order on its orderbook setting out its refusal to sign the bill of exceptions. It also recited the fact that the bill of exceptions had been tendered as a bill of exceptions. The entry would be meaningless in the record without something to which it could apply. It states that the court 'refuses to sign such bill of exceptions and make it a part of the record.'

To obtain a full statement of the record the document tendered as a bill of exceptions and the ruling of the court thereon are necessary. But the document is not a bill of exceptions. It is merely a document with respect to which the court made an order, and the order is a part of the record in the case. The effect of the order is to draw the document tendered as a bill of exceptions into the record not as a bill of exceptions, but merely as a document offered as a bill of exceptions, Upon this state of the record this court has before it exactly what occurred, and . . . cannot be mislead on the question as to whether the trial court failed to weigh the evidence. Just the plain truth is that the trial court refused to weigh the evidence and set out his reasons for not weighing it" in the record document tendered as a bill of exceptions.

The fallacy of this argument becomes apparent when we realize that, if accepted as the expression of a legal principle, any spurious document can be forced into the record by a simple expedient of tendering it as a bill of exceptions and an appellate court compelled to note its contents in passing upon the appeal without any guaranty of its authenticity. For example, a grossly inaccurate transcript of a witness' testimony, unauthenticated by reporter or judge, presented and refused as a bill of exceptions, would become a record document to be considered by an appellate court in determining the question as to the sufficiency of the evidence to sustain a jury's verdict. The unsoundness of the contention and its attendant threat to orderly procedure is too obvious to require further comment and we are constrained to adhere to our original holding that bill of exceptions No. 3 is not a part of the record before us in any manner, shape or form and, there being nothing else to indicate that the trial

court failed to weigh the evidence in ruling on appellant's motion for a new trial, we must presume that it performed its duty in that respect.

But the appellant says we are indulging a presumption that is obviously false. If its falsity is apparent it becomes so only through the acceptance and consideration of bill of exceptions No. 3, the contents of which this court has held cannot properly be made a part of the record in this case. It is fundamental that appellate courts must determine appeals upon the basis of the records before them. To do otherwise would destroy all orderly processes of appellate procedure.

Other questions raised by appellant's petition for a rehearing are but the repetition and reinforcement of propositions originally presented to us by briefs and oral argument, and we find no reason to alter our opinion in reference thereto.

Rehearing denied.

Reported in 60 N. E. (2d) 534.